DeVone MOORE, Appellant–Petitioner,

v.

Damon MOORE, Appellee–Respondent.

No. 49A02–0810–CV–978.

Court of Appeals of Indiana.

April 16, 2009.

Jon Laramore, Matthew T. Albaugh, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellant.

Kerry Hyatt Blomquist, The Indiana Coalition Against Domestic Violence, Indianapolis, IN, Attorney for Amicus Curiae.

## OPINION

ROBB, Judge.

### Case Summary and Issue

DeVone Moore appeals the trial court's issuance of an order for protection. For

our review, DeVone raises four issues,[1] which we consolidate and restate as whether the trial court properly issued the protective order in accordance with the Indiana Civil Protection Order Act ("CPOA"), Indiana Code chapter 24–26–5. Concluding the order for protection is defective, we remand with instructions.

*Facts and Procedural History*

DeVone and Damon Moore have had an off-and-on relationship for the past eleven years and are currently married.[2] They also have an eight-year-old daughter. In the past, Damon has been physically abusive to DeVone, but there is no evidence of any recent physical abuse. DeVone testified, however, that she experiences mental and emotional abuse that "made it worse for me because now the mental abuse is just—is worse as [sic] the physical abuse, you know, the mind games." Transcript at 6. Both the physical and mental/emotional abuse are generally triggered by Damon drinking alcohol. However, Damon has not directed abusive behavior toward the couple's daughter and DeVone described him as "a good dad." *Id.* at 8.

Recently DeVone decided to seek a divorce or annulment and filled out the requisite paperwork, although she has not yet filed the papers in court. Damon discovered the divorce paperwork, and, around this same time, he was suspended from work for a disciplinary matter. According to DeVone, Damon began "acting a little strange and he started drinking, which is some-

thing he knows I'm not okay with at all, because he changes when he drinks." *Id.* at 5. As a result, DeVone filed a petition for an order of protection and request for a hearing on June 18, 2008. In the petition, DeVone alleged the following: she had been the victim of domestic violence in the past; Damon had been drinking heavily and being very hostile; Damon played music very loudly in front of their apartment; and that upon returning home on one occasion, she found Damon sitting near a gun lying on a table. DeVone requested the following relief: prohibit Damon from committing, or threatening to commit, acts of domestic or family violence, stalking, or sex offenses against her; prohibit Damon from harassing, annoying, telephoning, contacting, or directly communicating with her; order Damon to stay away from her residence, school, place of employment, or other place; and evict Damon from her residence.[3] DeVone did not specifically request that the trial court address issues of parenting time in her petition.

On June 18, 2008, the trial court issued an ex parte order for protection and an eviction order and set the matter for hearing on June 30, 2008. DeVone and Damon both appeared at the June 30th hearing pro se. DeVone's testimony supported the allegations in her petition. Damon did not contradict DeVone's testimony with respect to the past physical abuse and his

---

**1.** Counsel for DeVone failed to include a statement of issues in the appellant's brief as required by Indiana Appellate Rule 46(A)(4). This omission has forced us to reconstruct the issues raised on appeal from the table of contents and the argument section, which has made our review of this case much more difficult.

**2.** At the time of the hearing, the couple had apparently been married for less than one year.

**3.** DeVone filled out a standard Petition for an Order of Protection and Request for a Hearing form created by the division of state court administration. *See* Form # PO–0100, available at http://www.in.gov/judiciary/forms/po/po/po-0100.pdf; Ind.Code § 34–26–5–3(a)(1)(A).

current difficulty dealing with the impending divorce and his suspension from work.[4] With respect to the gun, Damon testified that it belonged to a friend, who had asked Damon to hold on to it. Damon testified that when the police arrived to investigate, apparently in response to a call from DeVone, "I told the police officer the truth about the gun and he was like since you told me the truth, Damon, I'm not going to take you to jail. I just went and told them where the gun was, and they got it." Tr. at 12. Damon testified he is no longer in possession of the gun, or any other firearm and he has never been convicted of a crime.

The trial court held several colloquies with DeVone regarding what protection she was seeking.

> [Trial Court]—[M]a'am, you asked for and got an order for protection that would make it a crime for your husband to have contact with you. Is that the kind of order you want?
>
> [DeVone]—I don't know if I would want it to that strict point, but I just need him to understand that I need him to just be a father to this child and just kind of let me do what I need to do so I can go on with my life because us being together is not healthy at all.

*Id.* at 8.

> [Trial Court]—Ms. Moore, earlier we talked about a protection order, ma'am, that would make it a crime for your husband to have contact with you. You said that's not what you want?
>
> [DeVone]—I want some type of paperwork between us until this divorce is over, because my husband will say that he understands and as soon as he comes to me and asks me about being back together and I say no, it's like his attitude will change again. So, until he can

get everything finalized, I would like to keep some type of order. If it has to be protection, then that's the way I'm gonna go.

> . . .
>
> [Trial Court]—I have an option ma'am, called a no violent contact order that I would only issue if you asked me for it. But, that order would create protection for you in the sense that it would require Mr. Moore to have only peaceable contact with you, without threats of violence or actual violence. The law already says that, but, if the two of you were arguing on the law, if you had a fight in the Denny's, right, the police officers would presume that Mr. Moore was the one that was at fault.
>
> And, Mr. Moore, an order like that would create for you an obligation, sir, where if things started to get heated or if you and your wife were having an argument, you would have to hang up the phone or leave, you understand, sir, because, as I say, the presumption would be that she would need protection from you.
>
> Ms. Moore, does that sound like the kind of order that might assist you?
>
> [DeVone]—Yes, sir.

*Id.* at 13–15.

The trial court also offered to put conditions in the order preventing Damon from coming to DeVone's home or allowing contact only by telephone. In response, DeVone said "That sounds like a good plan." *Id.* at 15. The trial court then asked DeVone about whether Damon could come to the apartment to pick up his daughter for parenting time. DeVone stated "I don't mind him coming to my residence, but I would rather him call me first, because . . . he has a tendency to just kind of show up." *Id.* at 16. The trial court

---

**4.** At the time of the hearing, Damon had been reinstated to his job.

indicated that "it would be pretty hard for me to write an order that says he's got to call before he comes over." *Id.* DeVone, after clarifying that she could call the police if Damon caused any problems stated "that sounds like a good order and I don't need any conditions with that." *Id.* at 17.

Following the hearing, the trial court issued an order for protection using the standard form created by the division of state court administration.[5]  In the order, the trial court found: Damon represents a credible threat to the safety of DeVone; DeVone has shown by a preponderance of the evidence that domestic or family violence has occurred sufficient to justify the issuance of the order; Damon has failed to show good cause why the order should not be issued and agreed to the issuance of the order; and the following relief is necessary to bring about a cessation of the violence or the threat of violence.  The order enjoins Damon from "threatening to commit or committing acts of domestic or family violence against [DeVone]."  Appellant's Appendix at 10.  The order contains no other provisions.  However, the order does contain the boilerplate language required by Indiana Code section 34–26–5–3(c), including:

> Pursuant to 18 U.S.C. 922(g) [6], once a respondent has received notice of this order and an opportunity to be heard, it is a federal violation to purchase, receive, or possess a firearm while subject to this order if the protected person is:
>
> (A) The respondent's current or former spouse;

(B) A current or former person with whom the respondent resided while in an intimate relationship; or

(C) a person with whom the respondent has a child.

*Id.* at 12.  On the cover sheet for the protective order, the trial court checked "yes" to indicate that Damon is restrained from committing further acts of abuse or threats of abuse, but checked "no" to indicate that Damon is not Brady disqualified and that Damon is not restrained from any contact with DeVone.  DeVone now appeals.

### *Discussion and Decision*

### I.  Standard of Review

■ Initially, we note that Damon did not file an appellee's brief.  When the appellee fails to submit a brief, we need not undertake the burden of developing an argument on the appellee's behalf.  *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006).  Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.  *Id.* "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (citation and quotation marks omitted).  Where an appellant does not meet this burden, we will affirm. *Id.*

### II.  Order for Protection [7]

The Indiana Legislature has indicated that the CPOA "shall be construed to pro-

---

5.  *See* Form # PO–0112, available at http://www.in.gov/judiciary/forms/po/po/po-0112.pdf; Ind.Code § 34–26–5–3(a)(1)(B).

6.  The prohibition against purchasing, receiving, or possessing a firearm pursuant to 18 U.S.C. § 922(g) is more commonly referred to as a Brady disqualification.

7.  Our review of this case has uncovered an issue of possible confusion regarding the issuance of protective orders.  Here, DeVone sought a protective order for the interim period until she could file for divorce from Damon.  Indiana Code section 34–26–5–4 allows a party to file a petition in any county where the respondent currently or temporarily resides, where petitioner resides, or where the

mote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Ind.Code § 34–26–5–1; *Aiken v. Stanley*, 816 N.E.2d 427, 430 (Ind.Ct. App.2004). Indiana Code section 34–26–5–2(a) provides "A person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a: (1) family or household member who commits an act of domestic or family violence." "Domestic or family violence" means "Attempting to cause, threatening to cause, or causing physical harm to another family or household member" or "[p]lacing a family or household member in fear of physical harm." Ind.Code § 34–6–2–34.5(1), (2).

■ Generally, a trial court has discretion to grant protective relief according to the terms of the CPOA. *See* Ind.Code § 34–26–5–9. However, a finding by the trial court that domestic or family violence has occurred sufficient to justify the issuance of an order for protection means that the respondent represents a credible threat to the safety of the petitioner. Ind. Code § 34–26–5–9(f). Therefore, upon a showing of domestic or family violence by a preponderance of the evidence, the trial court "shall grant relief necessary to bring about a cessation of the violence or the threat of violence." *Id.*

The trial court specifically found that DeVone proved by a preponderance of the evidence that domestic or family violence had occurred sufficient to justify an order of protection and that Damon represents a credible threat to DeVone's safety, and the evidence supports these findings. The

domestic or family violence occurred. Indiana Code section 34–26–5–6 allows a party to seek a protective order at any time, even if divorce or other proceedings are pending in another court. In addition, Indiana Code section 31–15–5–1 allows a party to request a protective order under the CPOA in connection with divorce proceedings, which could conceivably be filed in a different county than the initial petition for a protective order. This presents the possibility of conflicting protective orders existing at the same time, leaving a respondent unclear about his or her obligations under the orders and the police unclear about which order to enforce. Although the CPOA seems to recognize this possibility, it does not seem to provide a solution to the conflict.

Indiana Code section 34–26–5–5 imposes on each party a "continuing duty to inform the trial court of: each separate proceeding for an order of protection; any civil litigation; each proceeding in a family, domestic, or juvenile court; and each criminal case; involving a party or a child of a party." However, the statute does not instruct the trial court on how to proceed in such an event. Indiana Code section 34–26–5–6 provides instruction to the trial court when a party who already has a divorce or other proceeding in

process files a petition for an ex parte protective order in a different court. In addition, Indiana Code section 34–26–5–9(g) states that an order for custody, parenting time, or possession or control of property issued in connection with a protective order is "superseded by an order issued by a court exercising dissolution, legal separation, paternity, or guardianship jurisdiction over the parties." However, the statute does not address the continuing effect of the protective order as it relates to issues between the parties, other than those related to children or property, except to state that it does not raise an inference or presumption in a subsequent case or hearing between the parties. Ind.Code § 34–26–5–9(h).

Because of the uncertainty created by the statute in situations where a party seeks a protective order, which the trial court grants after a hearing, and later files dissolution or other proceedings in a different court, we invite the Indiana Legislature to amend the Civil Protection Order Act to resolve the uncertainty. Either the first court to grant a protective order should retain jurisdiction over the issue until the expiration or dismissal of the protective order, or jurisdiction over the issue should transfer to the subsequent court once an action for dissolution or similar proceedings has been filed.

only question, then, is whether the trial court granted DeVone the protection she sought and the protection necessary to bring about a cessation of the violence or threat of violence.

### A. Contact Between the Parties

Initially, we note that the trial court made reference to an alternative "no violent contact order." No standard form for such an order has been created by the division of state court administration, and there is no mention of such an order in the CPOA, in Marion County's local rules, or in the Protection Order Deskbook.[8] In addition, the trial court issued an order for protection using the standard form authorized by the CPOA. Not only does the trial court's discussion of this alternative order confuse us, it obviously confused DeVone, who had difficulty understanding the relief being offered and communicating the relief she sought.

In her petition for a protective order, DeVone requested that Damon be prohibited from committing or threatening to commit acts of domestic or family violence, stalking, or sex offenses against her; harassing, annoying, telephoning, contacting, or directly or indirectly communicating with her; and coming to her residence, school, or place of employment.[9] Although she seemed unsure of the level of protection she desired at the hearing, this came primarily in response to the trial court's questioning and explanation of the alternative no violent contact order.

■ The trial court's order only prohibits Damon from threatening or actually committing an act of domestic violence against DeVone. At the hearing, DeVone indicated that she did not want Damon to be able to simply stop by her apartment whenever he wanted. DeVone also described a recurring pattern of discussion where Damon brings up the topic of reuniting and DeVone is required to tell him no with the resulting negative change in Damon's attitude. The trial court's order does not adequately address DeVone's concerns with continual harassment and annoyance from Damon regarding the prospect of reunifying, or her concern that he not be allowed to simply stop by the apartment anytime he likes. We hold that the order for protection does not provide the relief necessary to bring about a cessation of the violence or threat of violence as required by Indiana Code section 34–26–5–9(f). Therefore, we remand to the trial court to enter an order including the provisions in paragraphs two, prohibiting communication,[10] and three, requiring Damon to stay away from DeVone's residence [11] and place of employment, of the standard form—PO–0112, Order for Protection.

### B. Parenting Time

■ Although DeVone did not specifically request that the trial court address the issue of parenting time, the issue came into play when DeVone indicated that she did not mind if Damon picked up their daughter at the apartment, but requested that he call beforehand. The trial court is prevented from simultaneously requiring

8. Available at http://www.in.gov/judiciary/center/pubs/benchbooks/protection-orderdeskbook.pdf.

9. DeVone also requested Damon's eviction from their apartment, however, at the time of the hearing, this had already occurred, therefore the issue was moot.

10. See *infra* Part B suggesting the inclusion of an exception for communication regarding the couple's daughter.

11. To the extent that ordering Damon to stay away from DeVone's residence would interfere with his ability to exercise parenting time with their daughter, we address that issue below in Part B.

Damon to stay away from the apartment and allowing him to come over to pick up their daughter. *See* Ind.Code § 34–26–5–11 ("If a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection."). Neither the CPOA nor the standard form provide for an exception to the order to stay away from a petitioner's residence.

However, the standard form allows the trial court sufficient flexibility to address Damon's parenting time with his daughter while still providing sufficient protection to DeVone. For example, the provision that would prohibit Damon harassing, annoying, telephoning, contacting, or directly or indirectly communicating with DeVone, allows the trial court to enter an exception to the prohibition for communication involving parenting time or other issues involving their daughter. Similarly, the form allows the trial court to set terms for unsupervised parenting time, which could include instructions for Damon to pick up their daughter at a neutral or public location, rather than at DeVone's apartment.

Based on the increased level of protection ordered above, the trial court's order should include terms for unsupervised parenting time, including a provision for the exchange of the child in a neutral or public location. Therefore, we remand to the trial court to include terms for unsupervised visitation between Damon and the couple's daughter with input from both parties.[12]

### C. Brady Disqualification

■ Although the trial court's order includes the boilerplate language preventing Damon from purchasing, receiving, or possessing a firearm, the trial court omitted the specific provision (paragraph eight) of the standard form, which states: "The Respondent is prohibited from using or possessing a firearm, ammunition, or deadly weapon." In addition, the trial court erroneously checked no to the provision asking if the respondent is Brady disqualified, on the cover sheet. Therefore, we remand to the trial court to include paragraph eight of the standard form in its order and to check "yes" in the Brady disqualified box on the cover sheet.

### Conclusion

The trial court's order of protection is erroneous in that it does not provide the protection necessary to bring about a cessation of the violence or threat of violence, it fails to address the issue of parenting time, and it fails to implement the Brady law's prohibition on the purchase, receipt, or possession of a firearm by Damon. Therefore we remand with instructions to the trial court to:

(1) Amend its order to include paragraphs 2, 3, and 8 of the standard form—PO–0112, Order for Protection;

(2) Include terms for unsupervised parenting time between Damon and the couple's daughter; and

(3) Amend the cover sheet to check "yes" in response to the statement: The Respondent/Defendant is Brady disqualified.

Remanded with instructions.

CRONE, J., and BROWN, J., concur.

---

12. If the parties are able to agree to mutually acceptable terms for parenting time, then no additional hearing on the issue is necessary, and the trial court may simply incorporate such terms into its order. However, in the event the parties cannot agree to terms, the trial court should hold a hearing on the issue, determine reasonable terms, and incorporate the terms into its order.