**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CAROLYN S. HOLDER**
Holder and Fehrenbach
Lafayette, Indiana

ATTORNEY FOR APPELLEE:

**CYNTHIA PHILLIPS SMITH**
Law Office of Cynthia P. Smith
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD CLARK SHOCKLEY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1111-PO-1047 |
| | ) | |
| TAMMIE ANNE SHOCKLEY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1107-PO-5

**May 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Richard Clark Shockley ("Richard") appeals from the trial court's issuance of an order of protection ("the Protective Order"), which was entered pursuant to the Indiana Civil Protection Orders Act ("the CPOA")[1] for the protection of Richard's former wife, Tammie Anne Shockley ("Tammie"), their teenage daughter A.S., and Tammie's fiancé, Paul King ("King). On appeal, Richard raises the following consolidated and restated issues:

I.      Whether there was sufficient evidence presented to warrant the issuance of the Protective Order as to Tammie and King; and

II.     Whether there was sufficient evidence presented to warrant the issuance of the Protective Order as to A.S.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Tammie and Richard were married in 1986, and B.S., E.S., and A.S. were born to the marriage prior to its dissolution in June 2004. Initially, Richard and Tammie were awarded joint legal custody of the children, with Tammie having physical custody. In June 2006, after B.S. was emancipated, "the parties agreed that [Richard] was to have custody of [E.S]." *Appellant's App.* at 100. Around that same time, A.S. began to live with Richard "more than 50% of the time by agreement of the parties. No formal order was entered by the court regarding the change of custody." *Id*. at 101. King and Tammie met in 2006, and the two have lived together since around November 2010. *Id*. at 108.

In April 2011, Tammie and King lived in Remington, Indiana, and Richard and his second wife lived in West Lafayette, Indiana. A.S.—a student at West Lafayette High

---

[1] *See* Ind. Code §§ 34-26-5-1 to -20.

School—lived with Richard during the week in order to be closer to school. On April 5, 2011, Richard filed a "Verified Petition to Modify Custody [of A.S.] and for Emancipation" of the couple's middle child, E.S. *Appellant's App.* at 100. In his petition, Richard alleged, "That since the entry of the Decree of Dissolution, there has been a change of circumstances that make it in the best interest of [A.S.] to have custody awarded to [Richard]." *Id*. He also alleged, "[E.S.] is 20 years old and should be emancipated." *Id*. at 100.

On June 30, 2011, Tammie filed a petition for Protective Order against Richard and a request for a hearing. In the petition, Tammie requested that the Protective Order cover herself, her fiancé, and A.S. Tammie's petition arose, in part, from an incident that occurred on April 10, 2011, when King drove Tammie to Richard's house to pick up A.S. A Protective Order Hearing was held on August 5, 2011, during which Tammie testified about the April 10 event as follows:

> I was there to pick [A.S.] up at 6 o'clock on Sunday. [Richard] came out of the house and came up to the passenger side window and started yelling; saying that he would kill me; that he knew the police chief and that I should basically be worried. And he stood there and he stared at Paul King and myself for about 10 minutes and then went back in the house. He never sent [A.S.] outside to the car. And uhm, we went to the West Lafayette Police Station, uhm talked to one of the officers and they said that there wasn't anything that they could do.
>
> . . . .
>
> We went back—back to the home. At that time, [A.S.] came out of the home, got into our vehicle, and then we left.

*Tr*. at 6-7. When asked if there was contact between Tammie and Richard during the second encounter, Tammie stated. "He just opened the door, walked [A.S.] out to the car and . . . looked at us very—it scared us." *Id*. at 7.

Tammie further testified that Richard "has made it almost impossible for me to pick up my daughter on many occasions and since I have filed for child support it has gotten worse.[2] And his manner towards me and the texting and the phoning and the aggressive behavior is getting out of hand . . . ." *Id*. at 8. Additionally, Tammie claimed that the telephone calls and the texting from Richard intensified over the summer of 2011. *Id*. at 10. Richard would call an average of three to four times a week, and he would text about three to four times a week, "but some days it would be [four] or [five] times a day." *Id*. at 10-11.

A hearing on the Protective Order was held on August 5, 2011. Following the hearing the trial court entered the Protective Order as to Tammie, King, and A.S., with a scheduled expiration date of August 5, 2013. The Protective Order provided, in pertinent part, as follows:

ORDER FOR PROTECTION

FINDINGS

This matter having been heard by the Court on Friday, August 05, 2011 pursuant to Indiana Code § 34-26-5-10, the Court now makes the following Findings:

. . . .

___

[2] On May 11, 2011, Tammie filed a Verified Petition for Contempt Citation, requesting the trial court to find Richard in contempt by reason of Richard having "failed and refused to comply with the Court [Support] Order." *Appellant's App.* at 103.

4

c.  The Petitioner was present at the hearing and the Respondent
   ☑ was  ☐ was not present.

d.  This order ☐does ☑ does not protect an intimate partner or child.

e.  The Respondent had notice and an opportunity to be heard.

f.  The Respondent represents a credible threat to the safety of the Petitioner or a member of the Petitioner's household.

g.  The Petitioner has shown, by a preponderance of the evidence, that domestic or family violence, a sex offense, or stalking has occurred sufficient to justify the issuance of this Order.

. . . .

i.  The following relief is necessary to bring about a cessation of the violence or the threat of violence.

## ORDER

### Section 1—General Provisions

1.  The Respondent is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, or a sex offense against the Petitioner and the following designated family or household members, if any:

  [A.S.] (Female/White/Age15); Paul King (Male/White/Age 50)

2.  The Respondent is prohibited from harassing, annoying, telephoning, contacting or directly or indirectly communicating with the Petitioner, except:

  The Respondent may contact the Petitioner by email for purposes solely related to the parties' minor child. Further, that at the beginning and end of the parenting time for the former wife, she may pull into the Respondent's driveway at which time the child is to be allowed to leave the house to go to the car.

. . . .

5

4. The Respondent is ordered to stay away from the residence,

☐ school, and/or ☑place of employment

of the Petitioner. . . .

. . . .

*Appellant's App.* at 5-6. Richard now appeals.

## DISCUSSION AND DECISION

The CPOA provides for the granting of relief necessary to bring about a cessation of

the violence or threat of violence. Ind. Code § 34-26-5-9(f).

> The Indiana Legislature has indicated that the CPOA "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Ind. Code § 34-26-5-1; *Aiken v. Stanley*, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Indiana Code section 34-26-5-2(a) provides "A person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a: (1) family or household member who commits an act of domestic or family violence." "Domestic or family violence" means "[a]ttempting to cause, threatening to cause, or causing physical harm to another family or household member" or "[p]lacing a family or household member in fear of physical harm." Ind. Code § 34-6-2-34.5 (1), (2).

> Generally, a trial court has discretion to grant protective relief according to the terms of the CPOA. *See* Ind. Code § 34-26-5-9. However, a finding by the trial court that domestic or family violence has occurred sufficient to justify the issuance of an order for protection means that the respondent represents a credible threat to the safety of the petitioner. Ind. Code § 34-26-5-9(f). Therefore, upon a showing of domestic or family violence by a preponderance of the evidence, the trial court "shall grant relief necessary to bring about a cessation of the violence or the threat of violence." *Id.*

*Moore v. Moore*, 904 N.E.2d 353, 357-58 (Ind. Ct. App. 2009).

Generally, when, as here, a trial court enters findings of fact and conclusions thereon

pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review; first we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1075-76 (Ind. Ct. App. 2011), *trans. denied*. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id*. at 1076. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id*. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id*. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id*. We do not defer to conclusions of law, however, and evaluate them *de novo*. *Id*.

### I. Sufficiency of the Evidence as to Tammie and King

The trial court specifically found, "The Respondent represents a credible threat to the safety of the Petitioner or a member of the Petitioner's household." *Appellant's App.* at 5. Additionally, the trial court found, "The Petitioner has shown, by a preponderance of the evidence, that domestic or family violence . . . has occurred sufficient to justify the issuance of this Order." *Id*. Richard, however, contends that Tammie presented insufficient evidence to warrant the issuance of the Protective Order as to Tammie and King. We disagree.

"To obtain a protective order under CPOA, the petitioner must establish by a preponderance of evidence the truth of at least one of the allegations in the petition. *Mysliwy*, 953 N.E.2d at 1076; *A.S. v. T.H.,* 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). As alleged in her petition, Tammie had to prove that she "is or has been a victim of *domestic or*

7

*family violence*" and that the person against whom the petition is filed is the "family or household member who commit[ed the] act of *domestic or family violence*." Ind. Code § 34-26-5-2(a)(1) (emphasis added). "Domestic or family violence" means the occurrence of at least one of the following acts committed by a family or household member: "(1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member[; or] (2) Placing a family or household member in fear of physical harm." Ind. Code § 34-6-2-34.5. Here, Richard was a "family or household member" because he was Tammie's former spouse.[3] Ind. Code § 34-6-2-44.8(a)(1).

At the time Tammie requested the Protective Order, she and Richard were involved in a controversial post-dissolution custody dispute. Tammie stated that Richard's threats of physical violence and harassing telephone calls and texts were the basis for the Protective Order. During the Protective Order Hearing, the trial court separated the witnesses at the request of Richard's attorney. Tammie testified that on April 10, 2011, she and King went to Richard's house to pick up A.S. Richard came out of the house, came up to Tammie at the passenger window and started yelling, "saying that he would kill me." *Tr*. at 6. Richard said that he knew the police chief and that Tammie should be worried. *Id*. Richard stared menacingly for ten minutes at Tammie and King. *Id*. Tammie described his face as, "Just

---

[3] Richard maintains that the Protective Order may not be entered in connection with King. Asserting that the relationship in question is the one between Richard and King, Richard contends that King does not fit within the class of protected persons. *Appellant's Br*. at 11. Richard, however, misconstrues the CPOA. Here, a finding of domestic or family violence must be found between Richard and Tammie. Ind. Code § 34-26-5-2(a)(1). Once such a finding is made, the trial court may enjoin a respondent from threatening to commit or committing acts of domestic or family violence against "a petitioner and each designated family or household member" of the petitioner. Ind. Code § 34-26-5-9(b)(1). King was a family or household member of the petitioner because he was engaged to and lived with Tammie. Ind. Code § 34-6-2-44.8(a).

staring like you're going –you're going to get it. You're going to pay for it." *Id*. at 7. She testified that "his manner towards me and the texting and the phoning and the aggressive behavior is getting out of hand . . . ." *Id*. at 8.

Tammie's fiancé, King, who was also present on April 10, testified that Richard stormed out of his house, ran up to the car, and started yelling and screaming at Tammie. *Id*. at 40. King testified, "I felt very intimidated and waited to hear what was going on; what the conversation was, where it was leading. . . . [I]t was a Sunday and he [was] shouting and very angry." *Id*. King testified that Richard said, "I'm going to end this and you're not going to get [A.S.]; you can't see [A.S.] today." *Id*. at 40.

Harold Amstutz ("Amstutz"), a guardian ad litem appointed to represent A.S.'s interests, testified that he interviewed Tammie, Richard, and A.S. in order to prepare a report for the pending custody dispute. When asked about the incident on April 10, Amstutz testified that Tammie "did not give a specific date but she did recite and [sic] incident that is so similar that it has to be the same incident . . . ." *Id*. at 66. "She had said that [Richard] had threatened her bodily harm." *Id*. at 67. Amstutz testified that, in a follow-up questionnaire requesting additional details of the incident, Tammie said that Richard "leaned into the car about an inch from my face and told me that I would pay for this. . . . And then she goes on to say that he said he would rip me to shreds." *Id*.

Based on the evidence, the trial court found that Tammie had proved by a preponderance of the evidence that domestic or family violence had occurred, e.g., that Richard had threatened to cause physical harm to Tammie. The evidence also proved by a

9

preponderance of the evidence that King, a member of Tammie's household, also felt threatened and was intimidated by Richard's actions. Richard contends that he did not threaten to kill Tammie and that her "allegations are not credible in that if she were fearful for her life, she would not have gone to [Richard's] home in the first place." *Appellant's Br.* at 9. These arguments amount to an invitation to reweigh the evidence and judge witness credibility, which we will not do. *Tisdial v. Young,* 925 N.E.2d 783, 785 (Ind. Ct. App. 2010). The trial court concluded that, based on the evidence, Richard was enjoined from threatening to commit or committing acts of domestic or family violence against Tammie and King. Tammie presented sufficient evidence to support the trial court's issuance of the Protective Order as to Tammie and King.

## II.    Sufficiency of the Evidence as to A.S.

Richard next contends that the evidence was insufficient to support the issuance of a Protective Order as to A.S. Richard maintains that there was absolutely no evidence that he presents a threat to A.S., especially in light of the fact that she lives with him "approximately 50% to 65% of the time . . . ." *Appellant's Br.* at 9. Additionally, he asserts that A.S. was not present during the April 10 incident and that Paragraph d of the findings states that the Protective Order does not protect a child. *Appellant's App.* at 5.

During the Protective Order hearing, Tammie, King, Richard, and Amstutz all testified that A.S. had not heard any of the conversations during the April 10 altercation, but instead had been inside Richard's home. *Tr*. at 20, 39, 46-47, 68. At the close of the evidence, the following exchange occurred between the trial court and Richard's counsel:

| | |
|---|---|
| [Richard's Counsel]: | Your Honor the only other witness the Court cares to talk to her [sic], [A.S] is present. |
| By the Court: | No, she wasn't—I don't think. I think they both acknowledge that she was not as to this one particular incident [sic] everything else sounds like it is contact if at all between the parties. I'm not going to talk to her today. |
| [Richard's Counsel]: | And the only reason we why we brought [A.S.] was because she was listed on the petition as a witness. |
| By the Court: | And I appreciate that. I – I think that the . . . petitioner indicated that [A.S.] was inside and was not – did not hear what if anything did transpire. . . . |
| . . . . | |
| By the Court: | And frankly I don't want to drag her into anymore than she has to – has to be I should say. . . . |

*Id*. at 72-73. The evidence presented to the trial court supported a finding that A.S. was not

involved in the April 10 incident, nor even present when it occurred.

Additionally, the record before us contains no findings to support the issuance of the

Protective Order for A.S. At the close of the hearing, the trial court stated as follows:

> I'm going to find the petitioner is entitled to a protective order at this time. That the respondent he refrain [sic] from committing or threatening to commit acts of domestic or family violence or stalking . . . . Prohibit the respondent from committing or threatening to commit acts of domestic or family violence, stalking against Paul King. Prohibit the respondent from harassing, annoying, telephoning and contact directly or indirectly communicating with the petitioner except for the following: the respondent may contact the petitioner by email for purposes solely related to the party's minor child. . . .

*Id*. at 75. The trial court made no reference to a finding regarding A.S. The evidence

11

presented to the court regarding A.S. was that, although the parents had a dispute regarding custody, both parents agreed that A.S. would attend the high school in Richard's school district and that she could live with her father during the week. The record contains no evidence that Richard had ever threatened A.S. or in any way intimidated or put her in fear. Finding insufficient evidence that the Protective Order was necessary for the protection of A.S., we reverse the trial court's Protective Order as to A.S.

Affirmed in part and reversed in part.

BAKER, J., and BROWN, J., concur.