Dennis MYSLIWY, Appellant–
Respondent,

v.

Teresa MYSLIWY, Appellee–Petitioner.

No. 45A03–1009–PO–548.

Court of Appeals of Indiana.

May 26, 2011.

Publication Ordered July 8, 2011.

Transfer Denied Dec. 1, 2011.

George P. Galanos, Crown Point, IN, Attorney for Appellant.

Thomas E. Rucinski, Andrew P. Martin, Sachs & Hess, P.C., St. John, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Dennis Mysliwy (Dennis), appeals the trial court's issuance of a protective order against him in favor of Appellee–Petitioner, Teresa Mysliwy (Teresa).

We affirm.

### ISSUE

Dennis raises one issue on appeal, which we restate as the following: Whether there was sufficient evidence to issue a protective order.

### FACTS AND PROCEDURAL HISTORY

Dennis and Teresa's marriage was dissolved on February 24, 2010. Pursuant to the divorce decree, Teresa had physical custody of their two children. On May 10–11, 2010, Teresa was scheduled to be out of town for work, so the children stayed with Dennis. At some point during her trip, Teresa received a call from her housekeeper informing Teresa that there was water in her basement.

Upon arriving home, there was no evidence of a forced entry and nothing appeared to have been stolen, including $2,000 cash she had in her bedroom. Teresa went to the basement and discovered a large puddle of water on the floor near the water heater, which she recently had installed. She then realized that the leak was coming from the pipe leading to the bathtub upstairs. Teresa called Tiger Plumbing and they scheduled a plumber to come the next day. Later that evening, as Teresa sat down on her leather sofa, she

noticed that there was a slit in one of the cushions. At that point, she did not believe that the leaking pipe and damaged cushion were related.

The following day, David Prutsman (Prutsman) of Tiger Plumbing went to Teresa's house to fix the plumbing issue. While in the basement, Prutsman used a ladder to look at the pipes and discovered that a hole had been drilled in the PVC drain pipe. Teresa typically stored the ladder in the garage, but for some reason, it was in the basement that day.

After discussing the damages with Teresa, Prutsman asked her "Who hates you enough to do this?" (Transcript p. 31). Teresa then started to become "very shaky and [ ] worried about what was going on in [her] house." (Tr. p. 31). She went back upstairs, reexamined her sofa, and noticed more damage. She stated that it looked as if "someone had [taken] a utility knife and just slashed [the sofa] up." (Tr. p. 31).

Soon thereafter, Teresa noticed that her home was without heat. She went into her basement to examine her furnace, which she had serviced prior to winter. Teresa immediately noticed that the bottom panel to the furnace was loose and when she lifted the panel up, the inside of her furnace was burnt, and the wires looked as though they had been cut with wire cutters. Teresa called a company to come service her furnace.

The next day, Jeffery Nelson (Nelson) of Meyer Heating and Air Conditioning, responded to Teresa's service call to repair the furnace. Upon arrival, Nelson removed the circuit board and saw that the front side was severely burned, which "seem[ed] odd to [him] because [it was] all low voltage wiring" and the type of burns on the board generally do not occur on the front of the board where the low voltage wiring is located. (Appellant's Exh. p. 6). Based on the damage, Nelson concluded that there had been "some vandalism done in the house." (Appellant's Exh. p. 8). Teresa also noticed bleach spots on the carpet leading from the foyer to the stairs. Additionally, many of the clothes in her closet had been sprayed with bleach and had been slashed with a utility knife. However, none of the children's clothing had been damaged.

On May 18, 2010, Teresa filed a petition for an order for protection against Dennis and request for a hearing, which was set for September 3, 2010. At the conclusion of the hearing, the trial court, noting that Dennis is a mechanical engineer and had the "knowledge and ability to perform these acts[,]" issued a protective order and stated that "domestic or family violence or stalking has occurred sufficient to justify the issuance of this [protective] order." (Tr. p. 129). The protective order stated the following, in relevant part:

2. The Respondent is prohibited from harassing, annoying, telephoning, contacting or directly or indirectly communicating with the Petitioner, except:

EXCEPT TELEPHONICALLY OR E–MAIL ONLY RE: CHILD RELATED ISSUES OR THROUGH ATTORNEYS GAL OR MEDIATOR IN DIVORCE CASE OR IN ACCORDANCE WITH COMMUNICATION SPECIFICALLY ALLOWED IN THE DIVORCE CASE [ ].

(Appellant's App. p. 23). Dennis was also ordered to stay away from Teresa's home and her place of employment.

Dennis now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

Generally, when, as here, a trial court enters findings of fact and conclu-

sions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review; first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Davis v. Davis*, 889 N.E.2d 374, 379 (Ind.Ct.App.2008). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not defer to conclusions of law, however, and evaluate them *de novo*. *Id.*

## II. *Sufficiency of the Evidence*

██ Dennis argues that the evidence is insufficient to support the issuance of the protective order. Specifically, he argues that there is no evidence in the record to demonstrate that he committed domestic or family violence or stalking. In reviewing the sufficiency of the evidence to support an order of protection, we neither reweigh the evidence nor judge the credibility of the witnesses. *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind.Ct.App.2010).

██ Civil orders for protection are governed by the Civil Protection Order Act (CPOA). We have observed that "our legislature has dictated that the CPOA shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." *Aiken v. Stanley*, 816 N.E.2d 427, 430 (Ind.Ct.App. 2004).

(a) A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:

(1) family or household member who commits an act of domestic or family violence; or

(2) person who has committed stalking under [I.C. § ] 35–45–10–5 or a sex offense under [Indiana Code chapter] 35–42–4 against the petitioner.

Ind.Code § 34–26–5–2(a). To obtain a protective order under CPOA, the petitioner must establish by a preponderance of the evidence at least one of the allegations in the petition. *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind.Ct.App.2010). Thus, Teresa was only required to show I.C. § 34–26–5–2(a)(1) *or* (2), and we find that she presented sufficient evidence that Dennis committed domestic or family violence by placing Teresa in fear. We will, however, address the stalking issue.

### A. *Domestic Violence*

██ First, Dennis argues that there is insufficient evidence to demonstrate that he committed domestic or family violence. "Domestic violence" is defined as the occurrence of an act by the respondent attempting to cause, threatening to cause, or causing physical harm to the petitioner, or placing the petitioner in fear of physical harm. I.C. § 34–6–2–34.5. Further,

[a] finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief

necessary to bring about a cessation of the violence or the threat of violence. I.C. § 34–26–5–9(f).

Here, Teresa requested a protective order under CPOA on the grounds that Dennis' actions placed her in fear. In Teresa's petition, she referenced the fact that there was already a protective order because in 2008, Dennis' girlfriend at the time called Teresa and informed her that Dennis had made threatening comments against Teresa; specifically that he wanted to kill her. Next, Teresa stated that Dennis had come into her home when he knew she was out of town and vandalized her property and caused extensive damage to her home.

It is clear that based on the evidence, Dennis presents a threat to Teresa. First, the person who committed the acts against Teresa was someone who had access to her home because there was no evidence of a forced entry. While Teresa testified that Dennis does not own a key to her house, he had access to a key through their children. Additionally, nothing had been stolen despite the fact that she had $2,000 cash in her bedroom, which indicates that the person who committed the acts wanted to send Teresa a message. In fact, this sentiment was shared by Prutsman who asked Teresa, "Who hates you enough to do this?" (Tr. p. 31). Second, the trial court found that the person who committed the acts also had a very specialized knowledge of electrical circuitry and from that knowledge knew how to manipulate the circuit board in Teresa's furnace. As a mechanical engineer, Dennis is fully capable of damaging Teresa's furnace in a way that Nelson, as a lead service technician for over five years, testified that he had "never seen a [circuit] board burn like that[.]" (Appellant's Exh. pp. 13–14).

At the hearing, Nelson stated in his deposition, which was entered into evidence, that based on the damage done to

the circuit board, it appeared that someone had "tried to set the board on fire." (Appellant's App. p. 188). In addition to the furnace, Dennis drilled a hole in her bathtub drain pipe, slashed her couch, damaged her carpet and clothing with bleach— all of which caused Teresa to become "very shaky and [ ] worried about what was going on in [her] house." (Tr. p. 31). In fact, when asked whether she was concerned for her safety and well-being, Teresa stated that she was in fact very concerned for herself as well as her children. In sum, we find that Teresa presented sufficient evidence to support the trial court's issuance of the protective order.

### B. *Stalking*

Second, Dennis argues that there is no evidence in the record that he committed stalking. We agree. Pursuant to the CPOA, "domestic violence ... includes stalking." I.C. § 34–6–2–34.5. Stalking is defined as "a knowing or an intentional course of conduct involving *repeated or continuing* harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35–45–10–1 (emphasis added). "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuous impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35–45–10–2. "Impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim. I.C. § 35–45–10–3. "[T]he term 'repeated' in Indiana's anti-stalking laws means 'more than once.'" *Johnson v. State*, 721 N.E.2d 327, 332–33 (Ind.Ct. App.1999), *trans. denied.*

In *A.S.*, this court held that stalking was established by evidence that A.S. struck T.H. in the mouth with her open hand; tried to knee him in the groin; yelled obscenities while repeatedly driving past T.H.'s residence; destroyed an item of his clothing by writing obscenities on it; and called T.H.'s residence eight times within six minutes. We found that these were "repeated acts of harassment." *Id.* at 807.

 Before the trial court issued the protective order, it stated that the damage done to Teresa's house constituted stalking: "[t]he multiple acts under stalking would be, number one, the pipe drilling; number two, furnace; number three, clothing; number four, sofa." (Tr. p. 129). While the trial court did not specifically mention stalking in the protective order, we find that the single occurrence on May 10, 2010 does not amount to stalking. As we said in *A.S.*, there must be "repeated acts of harassment." *A.S.*, 920 N.E.2d at 807. Additionally, the stalking must continuous. *See* I.C. § 35–45–10–1. Despite the fact that there already was a previous protective order from 2008 in place, which the trial court took judicial notice of, this does not amount to "continuous" acts of harassment, as there was two years in between the two occurrences. As such, Teresa did not provide sufficient evidence to demonstrate that Dennis committed stalking.

*CONCLUSION* [1]

 Based on the foregoing, we conclude that there was sufficient evidence to support the trial court's issuance of the protective order.

Affirmed.

DARDEN, J., and BARNES, J., concur.

### ORDER

On June 2, 2011, Appellant, by counsel, filed a Motion to Publish Memorandum Opinion.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Motion to Publish Memorandum Opinion is GRANTED, and this Court's opinion handed down in this cause on May 26, 2011, marked Memorandum Decision, Not for Publication, is NOW ORDERED PUBLISHED.

RILEY, DARDEN, JJ., concur.

BARNES, J., dissents.

---

1. In her Appellee's Brief, Teresa requests attorney's fees because "Dennis' appeal is wholly frivolous and baseless...." (Appellee's Br. p. 19). Indiana Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the [c]ourt's discretion and may include attorneys' fees." "[S]uch an award is discretionary and may be ordered when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Carter–McMahon v. McMahon*, 815 N.E.2d 170, 179 (Ind.Ct.App.2004) (quotations and citations omitted). "However, we must use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect upon the exercise of the right to appeal." *Id.* at 179–80. "The sanction of appellate damages for lack of merit should be applied only when the party's contentions and arguments are utterly devoid of all plausibility." *Id.* at 180. We cannot say that Dennis' appeal is frivolous and therefore decline to award Teresa appellate attorney's fees.