**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN T. FULK, ESQ.**
Fulk & Associates, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**NICHOLAS J. HURSH**
**PAUL R. STURM**
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY FLORES, | ) | |
| | ) | |
| Apellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1307-PO-279 |
| | ) | |
| BLAKE A. HUDSON, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Jennifer DeGroote, Magistrate
Cause No. 02D03-1301-PO-184

**May 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Anthony Flores ("Flores") appeals the Allen Superior Court's dismissal of the petition for the protective order that he sought against Blake Hudson ("Hudson"). On appeal, Flores raises three issues, which we consolidate and restate as whether the trial court's dismissal of the petition for protective order for lack of sufficient evidence was in error.

We affirm.

## Facts and Procedural History

Flores and Hudson lived together for approximately eight years in Flores's home in Fort Wayne. In mid-December 2012, Hudson announced that he planned to move out of the house. On December 23, 2012, Flores asked Hudson to move out earlier than planned, since Flores planned to be out of town for the holidays and was concerned that Hudson would steal his belongings while he was gone. Hudson became enraged at this request and, according to Flores, behaved threateningly towards him. Later that day, Flores and his cousin visited the home of Connie Clause ("Clause"), a friend of Flores's and Hudson's. While Flores and his cousin were at Clause's home, Clause apparently attempted to keep Flores and his cousin from leaving her home and returning to Flores's home by physically blocking the exit three different times. When Flores eventually returned to his home, two other acquaintances of his and Hudson's were waiting on the sidewalk in front of the home and attempted to block Flores from entering his home by grabbing his arm.

About one month later, on January 22, 2013, Flores filed his petition for a protective order against Hudson. In his petition, Flores alleged that he and Hudson

"resided together in an intimate relationship." Appellant's App. p. 3. Flores also claimed that Hudson threatened to and "attempted to cause physical harm" to Flores and placed Flores "in fear of physical harm." Id. at 4. Specifically, Flores reported that, on December 23, 2012, (1) Hudson "raised his hands and gave a threatening look to intimidate [Flores]"; (2) Flores and his cousin "were kept in a basement against [their] will" by Hudson's friends; and (3) Hudson's friends threatened Flores. Appellant's App. pp. 5-7. Flores also alleged that, on some unspecified date, Hudson, while holding a firearm, told Flores "I could kill you and no one would know it was me [because] of the people you see at work"[1] and that Hudson also told Flores, while holding a firearm, "I ought to shoot me a Mexican." Id.

The same day, January 22, 2013, the trial court issued an ex parte protective order restraining Hudson from "directly or indirectly communicating" with Flores. Appellant's App. p. 11. The trial court held an evidentiary hearing on the protective order on June 13, 2013. At the hearing, Flores testified he and Hudson lived together for "[m]aybe eight (8) years." Tr. p. 9.

> During the hearing, the following exchange occurred:
>
> Counsel for Flores: Now on the . . . when you were living with [Hudson] or he was living with you I should say, was it a smooth relationship the last two (2) years?
>
> Counsel for Hudson: Objection, there's no incident going back prior to 12-23-2012 with the exception…
>
> *  *  *

---

[1] Flores, a psychologist, provides "treatment for the criminal population." Appellant's App. p. 7.

3

Court: I will sustain the objection because it was a very broad question of what else was going on during the last (2) years of the relationship and, again, as I've stated it's what—the only other potential testimony that someone could offer is if some incident occurred after the petition was filed that couldn't be contemplated to be put in a petition but we can't go back and open the doors up if the other side is not on notice if they're objecting to that so the objection is sustained.

Tr. p. 25.

At the conclusion of Flores's case-in-chief, Hudson, by counsel, moved to dismiss Flores's petition under Trial Procedure Rule 41.[2] The trial court granted Hudson's motion to dismiss, stating that "the only category that has been alleged is domestic or family violence which does require establishing to the Court that there was some relationship by blood, marriage, adoption, or intimacy and that was not established in the case-in-chief and I will dismiss the claim based on that." Tr. p. 52.

Flores now appeals.

**Discussion and Decision**

Flores argues that the trial court's dismissal of his petition for a protective order was erroneous. Specifically, he argues that the trial court "employed the wrong legal standard, as 'intimate relationship' is not defined by [the Indiana Civil Protection Order Act]"; that the trial court "erred in entertaining [Hudson's] inference that the two were

---

[2] Indiana Trial Procedure Rule 41(B) provides, "After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

merely 'roommates'"; and that the trial court improperly excluded evidence regarding the nature of Flores's and Hudson's relationship. Appellant's Br. at 8.

Civil orders for protection are governed by the Civil Protection Order Act ("CPOA"). Mysliwy v. Mysliwy, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), trans. denied. "[T]he CPOA shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Id. A petition for relief under the CPOA must include specific acts or feared acts of abuse, harassment, or disruption of the peace of the petitioner. Garmene v. LeMasters, 743 N.E.2d 782, 785 (Ind. Ct. App. 2001). To obtain relief, the petitioner must establish at least one of the allegations in the petition by a preponderance of the evidence. A.S. v. T.H., 920 N.E.2d 803, 806 (Ind. Ct. App. 2010).

Flores argues that the trial court erred in dismissing his petition for lack of sufficient evidence. In determining the sufficiency of the evidence on appeal, we neither reweigh the evidence nor resolve questions of credibility. A.S., 902 N.E.2d at 806. We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment. Id. In this case, where the trial court dismissed the protective order after a hearing and thereby effectively denied his petition, Flores is appealing from a negative judgment; in this context, we will reverse only if we are convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. See Flash v. Holtsclaw, 789 N.E.2d 955, 959 (Ind. Ct. App. 2003), trans. denied.

Here, following a hearing, the trial court dismissed Flores's petition for a protective order, finding that Flores did not show, by a preponderance of the evidence, that an intimate relationship existed between Flores and Hudson. Flores argues that no evidence of such a relationship is necessary. Under the facts and circumstances before us, we disagree.

> Under the CPOA:
>
> A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:
>
> (1) family or household member who commits an act of domestic or family violence; or
>
> (2) person who has committed stalking under IC 35-45-10-5 . . . .

Ind. Code § 34-26-5-2(a)(2).

The trial court may issue or modify a protective order only upon a finding "that domestic or family violence has occurred[.]" Ind. Code § 34-26-5-9(a). And for purposes of the CPOA, "domestic and family violence" means, in relevant part:

> except for an act of self-defense, the occurrence of at least one (1) of the following acts committed by a family or household member:
>
> (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.
>
> (2) Placing a family or household member in fear of physical harm.

Indiana Code section 34-6-2-44.8(a) provides that:

> An individual is a "family or household member" of another person if the individual:
>
> (1) is a current or former spouse of the other person;
> (2) is dating or has dated the other person;

6

(3) is engaged or was engaged in a sexual relationship with the other person;
(4) is related by blood or adoption to the other person;
(5) is or was related by marriage to the other person;
(6) has or previously had an established legal relationship:
    (A) as a guardian of the other person;
    (B) as a ward of the other person;
    (C) as a custodian of the other person;
    (D) as a foster parent of the other person; or
    (E) in a capacity with respect to the other person similar to those listed in clauses (A) through (D);
(7) has a child in common with the other person; or
(8) has adopted a child of the other person.

Flores contends that the statute does not require that a petitioner show evidence of an intimate relationship to have standing to file a petition for a protective order under the CPOA. Flores argues that he was only required to prove that Hudson was a "family or household member." See Appellant's App. p. 3; Ind. Code § 34-26-5-2(a)(2). However, Flores failed to present any evidence that Hudson and Flores were blood or adoptive relatives, spouses or former spouses, had a child in common, or had a legal relationship with each other. See Ind. Code § 34-6-2-44.8(a). The only other type of relationship which would statutorily support a conclusion that Hudson was a "family or household member" would be a current or former dating or sexual relationship. Flores argues that he and Hudson did have an intimate relationship, but the trial court's decision to disregard this claim was well within its discretion, especially since Flores pointed to no evidence indicating the presence of an intimate relationship other than his own statement in his petition for a protective order and his testimony that he and Hudson lived together for eight years.

7

Flores contends that the trial court's dismissal of his petition "clearly ignores the only evidence of record that Dr. Flores resided for eight (8) years in an intimate relationship with Hudson." Appellant's Br. at 7. This argument, however, asks us to reweigh the evidence, which we will not do. See Mysliwy, 953 N.E.2d at 1076. The trial court was in the best position to judge the credibility of the witnesses, weigh the evidence, and determine whether Flores met his burden of proof. See Benefit Trust Life Ins. Co. v. Waggoner, 473 N.E.2d 646 (Ind. Ct. App. 1985) (when trial is to the court, defendant can test sufficiency of plaintiff's evidence by moving for dismissal).

Finally, Flores argues that "the Court's exclusion of attorney Lang's questioning (and Flores's further testimony) regarding the last two (2) years of their relationship (i.e. the only period relevant to the Petition, as stated by the Commissioner herself) prevented Appellant from further substantiating with relevant evidence the nature of the parties' relationship." Appellant's Br. at 14. This argument is also without merit. The trial court did not prohibit Flores from testifying about the nature of his relationship with Hudson. Instead, it sustained an objection to a "very broad" question posed by Flores's counsel during direct examination. Tr. p. 25. The trial court did not bar all testimony about the subject matter of Flores's relationship with Hudson. Nothing prohibited Flores's counsel from re-wording her question or from posing more narrow questions regarding the nature of Flores's relationship with Hudson during the immediate, relevant time period, rather than during the two years prior to the events leading to Flores's petition. As such, we conclude that Flores has not established reversible error here.

## Conclusion

For all of these reasons, we conclude that the trial court properly dismissed Flores's petition for a protective order.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

9