**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN M. PLUMMER, JR.**
Plummer Law Offices
Bedford, Indiana

ATTORNEY FOR APPELLEES:

**JAMES G. PITTMAN**
Pittman, Emery & Nikirk
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL R. WALLS, | ) | |
| | ) | |
| Appellant-Petitioner/Respondent, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIAN JOSEPH EAGAN, | ) | No. 47A05-1405-PO-231 |
| | ) | |
| Appellee-Petitioner/Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DALE TERRELL, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable James F. Gallagher, Judge Pro Tempore
Cause Nos. 47C01-1401-PO-63, -34, -142[1]

**November 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] These three cases involve several neighbors petitioning for protective orders against each other and were consolidated at the trial court and remain consolidated on appeal.

Daniel R. Walls appeals the trial court's orders: 1) granting his neighbor Brian Joseph Eagan's petition for a protective order against Walls in Cause No. 47C01-1401-PO-63; 2) denying Walls's petition for a protective order against Eagan in Cause No. 47C01-1401-PO-142; and 3) denying Walls's petition for a protective order against neighbor Dale Terrell in Cause No. 47C01-1401-PO-34. Walls raises three issues, which we consolidate, restate, and reorder as:

I. Whether the trial court erred in denying Walls's separate petitions for a protective order against Eagan and Terrell; and

II. Whether the trial court erred in granting Eagan's petition for a protective order against Walls.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The three cases consolidated here on appeal reflect a longstanding and ongoing dispute among Walls, Eagan, and Terrell—the owners of three neighboring properties in a rural part of Bedford, Indiana. Walls, who is in his mid-sixties, is a Vietnam veteran who lost his leg in combat and took early retirement in 1990 because of a disability related to post-traumatic stress disorder. Walls lives with his wife, Janet, on sixty-three acres of land, which falls both on the north and south side of Logan Donica Road. Walls's home is located on the northern part of the land;[2] the southern part of the land is marked with at least two ponds and a line of white pine trees that Walls planted near a fence and along

---

[2] Eagan's Exhibit 1 is an aerial photograph of the properties in question, which Terrell testified was "north running to the top of the page." *Tr*. at 3. That photograph reveals that Walls's home is located on the property that is north of Logan Donica Road, and not, as stated in Walls's brief, on the "south side of the county road." *Appellant's Br*. at 2.

Logan Donica Road. Terrell is retired and in his mid-seventies. Terrell, his wife, and grandson live on land that is located both southeast and, because of a bend in Logan Donica Road, directly across the road from and east of Walls's property. Terrell's home faces the portion of Walls's land that is fenced off from the road and lined with white pines. Eagan, who is thirty-nine years old, lives with his wife, one teenage son, and two teenage daughters. Eagan owns thirty-five acres of land that lies south of Terrell's property and is separated from Terrell's property by Donica Church Road. Like Terrell's property, Eagan's property lies east of and across Logan Donica Road from Walls's property.

The trial court held a hearing on the three petitions, and the evidence most favorable to the trial court's judgments follow. The dispute among the three men began around 2003 and reached a boiling point on January 13, 2014. On that date, Walls was driving his tractor down the road in front of Terrell's home while Terrell was on his front porch. Walls pulled his tractor onto Terrell's property and accused him of taking pictures of Walls. Terrell testified that Walls "[c]ame up onto [his] porch," hit him in the face and kicked him in the shins, which resulted in bruising and required Terrell to go to the hospital. *Tr.* at 49, 51. Terrell testified that Walls said, "'I'm just going to kill you, son of a bitch,' and got back on his tractor and left." *Id*. at 50. Terrell called Eagan the next day to tell him what happened.

Eagan testified that he has had trouble with Walls "videotaping, taking pictures, comments being made, not only to me [Eagan] but, you know, my wife at times, and I mean threats, I guess. You know just intimidation. Just over and over and over and over

3

on stuff, you know . . . ." *Id*. at 6. Eagan described a particular incident in July 2013, when he was using a backpack sprayer to help Terrell spray for weeds. Walls saw Eagan near his property and called the police to report that Eagan had sprayed Walls's white pine trees with poison, some of which later died.

After helping Terrell, Eagan had returned home and was playing basketball with one of his daughters when Officer Cory Hausell, with the Lawrence County Sheriff's Department, pulled up in front of Eagan's house. Eagan described their encounter as follows:

> It was dark at the time. [Officer Hausell] told me he goes, "Hey," he goes, " [Walls] said something that just worries me," and I said, "What did he say?" and he said, "Well he basically he [sic] would kill you if he had a gun in his hands at the time while you were spraying his trees. He would kill you," I'm going, "You don't think he meant it, do you?" He goes, "Well he's got me scared shitless," so I said, "Well, ok-"

*Id*. at 26. Officer Hausell testified that Walls said if he'd "had a gun in his hand" when he saw Eagan spraying, Walls "would have shot the son of a bitch." *Id*. at 40. When asked, Walls confirmed that he remembered saying those words to Officer Hausell. *Id*. at 100. Walls explained that he was pretty mad because Eagan was on his property. *Id*. Walls also testified that he remembered saying that he "killed six men before and it wouldn't take

4

much to kill that son of a bitch," referring to Eagan. *Id*. "He was on my property spraying my property. I think Indiana law give me the right to use deadly force."[3] *Id*.

Indiana Conservation Officer Ryan John testified that three months later, in October 2013, he was called out to investigate a report that Walls had, during "archery season," used a rifle to shoot a deer on his property. *Id*. at 105. Walls reported that he had been shooting at a beaver, and Officer John was unable to locate a dead deer. *Id*. Officer John testified that Walls was very upset that someone had called. "[Walls] made threats that he was going to kill all his neighbors and then kill [Officer John] and any other police officers that showed up and he went on again to tell me that he's killed six people in Vietnam and he's got stickers on his truck to show it and it wouldn't bother him to kill anyone else and that he's talked to his wife about doing this and he was very serious." *Id*. at 106. Officer John stated that Walls's statements were recorded and that he has the recording.

On January 15, 2014, two days after Walls and Terrell had come to blows, Walls filed a petition for a protective order against Terrell. Six days later, Eagan filed a petition for a protective order against Walls. Finally, on January 28, 2014, Walls filed a petition for a protective order against Eagan. Walls did not file an appendix with this court. Accordingly, we do not have a copy of any of the petitions filed in this case. The trial

---

[3] We find it necessary to correct Walls's misunderstanding. Pursuant to Indiana Code section 35-41-3-2, a person is justified in using reasonable force, including deadly force against any other person, and does not have to retreat, if the person reasonably believes that the force is necessary to terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle. The land across the road from Walls's home would not fall under this section. Indiana Code section 35-41-3-2, however, provides that with respect to property other than a dwelling, curtilage, or occupied motor vehicle, a person is justified in using *reasonable force* if that person *reasonably believes* that force is necessary.

5

court's orders, however, reveal that the petitions filed by Walls and Eagan each requested a protective order on the basis that the other party was engaged in stalking. A two-day hearing on all three petitions commenced on March 13, 2014, and continued, about a month later, on April 17, 2014. During the hearing, Eagan introduced photographs of two signs that Walls had posted on his trees. The first sign provided:

> 7-22-2013
> I caught Brian Eagan spraying poison on my white pine trees in front of Dale Terrell's house. He did it in daylight. Da! The police have given Brian Eagan a No Trespass Order! This sign is on private property! It better not turn up missing!

*Eagan's Ex*. 4. The second sign provided:

> A neighbor with a large farm and a business called me a chicken _ _ _ _[4] S.O.B. and told me he wants me out of this country. He told me this last month. That is the reason I've put the 6 Vietcong flags and a copy of my Bronze Star with Combat V on this tree. The Bronze Star I rec[ei]ved for saving lives. Both American and Vietnamese. I was a doctor for 5 villages. The Vietcong flags are for the 6 men I killed while on 120 combat patrols. The other 14 men I shot—I turned around and saved their lives. One became our scout & alerted us to booby traps.

*Eagan's Ex*. 5. On April 30, 2014, the trial court granted Eagan's petition and denied both of Walls's petitions. Walls now appeals.

## DISCUSSION AND DECISION

Walls contends that the trial court erred: (1) when it denied both his January 15, 2014 petition for a protective order against Terrell and his January 28, 2014 petition for a protective order against Eagan; and (2) when it granted Eagan's January 21, 2014 petition

---

[4] Walls wrote "chicken _ _ _ _." on the sign and did not spell out the second word. *Eagan's Ex*. 5.

6

for a protective order against Walls. All petitions alleged that the subject of the protective order engaged in stalking the petitioner.

Pursuant to the Indiana Civil Protection Order Act, "A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member who commits an act of domestic or family violence; or (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner." Ind. Code § 34-26-5-2(a). "The definition of 'domestic or family violence' for this purpose also includes stalking as defined in Indiana Code section 35-45-10-1 or a sex offense, 'whether or not the stalking or sex offense is committed by a family or household member.'" *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010) (quoting Ind. Code § 34-6-2-34.5); *see also Parkhurst v. Van Winkle,* 786 N.E.2d 1159, 1161 (Ind. Ct. App. 2003) (for purposes of an order for protection, stalking and sex offenses need not be committed by a family or household member to constitute "domestic or family violence.").

"Protective orders are in the nature of injunctions." *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013). "Therefore, in granting a protective order the trial court must *sua sponte* make special findings of fact and conclusions thereon." *Id*. Where, as here, the trial court entered findings of fact and conclusions thereon pursuant to Trial Rule 52(A), we apply a two-tiered standard of review. *Mysliwy v. Mysliwy,* 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied.*

> "[F]irst, we determine whether the evidence supports the findings, and second, whether the findings support the [order]. In deference to the trial

7

court's proximity to the issues, we disturb the [order] only where there is no evidence supporting the findings or the findings fail to support the [order]. We do not reweigh the evidence, but consider only the evidence favorable to the . . . [order]. Those appealing the . . . [order] must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them *de novo.*"

*Hanauer*, 981 N.E.2d at 148 (internal citations omitted) (quoting *Mysliwy,* 953 N.E.2d at 1076).

## I.    Denial of Walls's Petitions for Protective Orders

Walls petitioned for a protective order against both Eagan and Terrell, claiming that they had engaged in stalking. Indiana law defines "stalking" as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that *actually causes the victim* to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1 (emphasis added). "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that *actually causes the victim* to suffer emotional distress." *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 757-59 (Ind. Ct. App. 2013) (emphasis added) (citing Ind. Code § 35-45-10-2). Harassment, however, "does not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes." Ind. Code § 35-45-10-2.

8

Walls alleges that Eagan, Terrell, and Terrell's grandsons subjected Walls and his wife, Janet, to the following harassment:

Terrell drove his lawnmower near Janet, while she was gardening, and "put his hand in his crotch area and make [sic] motions." *Appellant's Br*. at 7.

Shots were fired over Walls's house while Janet was outside working.

Eagan and Terrell sprayed Walls's pine trees with poison.

Eagan and Terrell burned material in an outdoor furnace when the wind was blowing toward Walls's property.

Eagan, or someone on his property, aimed a laser into Walls's eyes.

Two arrows that were shot into Walls's field appeared to have come from Eagan's property.

Eagan shot out the lights around Walls's pond, ostensibly to scare geese away.

Terrell's grandsons have twice damaged Walls's mailbox with a baseball bat, have entered Walls's property at night, and have taken pictures of Walls's wife when she was inside her own house.

To constitute stalking, Walls had to prove not only that that these actions constituted *repeated or continuing* harassment of Walls, but also that these actions "cause[d] [Walls] to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. Walls did not meet this burden. Walls alleged repeated incidents of harassment committed by both Terrell and Eagan; however, the record before us contains insufficient evidence that Walls felt terrorized, frightened, intimidated, or threatened. To the contrary, Walls testified that Eagan and a friend "were shooting over the tops of me and my granddaughter's head when we [were] down at the creek fishing down at Salt Creek. [Eagan] talks about being

9

afraid of me. Well I'm not afraid of him. You know. He shot at me, he's done all this stuff, I'm not afraid of Brian." *Tr*. at 79. Later in his testimony, Walls also said that he was "not scared" of either Terrell or Eagan. *Id*. at 94. The trial court's determination to deny the two petitions filed by Walls was not clearly erroneous.

## II.  Grant of Eagan's Petition for a Protective Order

Walls also argues that the trial court erred in granting Eagan's petition for a protective order against Walls. During the hearing, Eagan testified that, since around 2003, he has had trouble with Walls "videotaping, taking pictures, comments being made, not only to me but, you know, my wife at times, and I mean threats, I guess. You know just intimidation. Just over and over and over and over on stuff, you know . . . ." *Tr*. at 6.

Eagan described an incident in July 2013, where police officers came to his home to investigate a complaint made by Walls. *Id*. at 8. Eagan described that, on that day, he was helping Terrell by spraying weed killer around Terrell's trees. Once finished, Eagan returned home, and while he was playing basketball with one of his daughters, Officer Cory Hausell, with the Lawrence County Sheriff's Department, pulled up in front of Eagan's house.

Regarding this encounter Eagan testified that Officer Hausell stated that something worried him. Eagan learned that Walls had stated, if he had had a gun when he saw Eagan spraying his trees, he would have killed Eagan. When Eagan asked the officer whether he believed what Walls had said, the officer stated, "Well he's got me scared shitless." *Id*. at 26. Officer Hausell also relayed Walls's statements that "he's killed six men before and it

wouldn't take much to kill that 'son of a bitch,'" referring to Eagan. *Id*. at 43.

Eagan testified that he had put up with Walls's "intimidation," because he and his wife always thought that Walls would not do anything physical. *Id*. at 29. Walls's altercation with Terrell changed everything and caused Eagan, his wife, and his children to become "[s]cared half to death." *Id*. Eagan testified that he filed a petition for a protective order against Walls after Walls attacked Terrell because:

> To beat him [Terrell] up or whatever, you know, I mean-I got my head going, you know. Dale's seventy-some years old. I'm young. I'm only thirty-nine years old, and I'm thinking, "What if he [Walls] can't take it no more against me?" Well, I told my wife, "He ain't going to just come with his fist. He's going to come over with a gun or something because he knows I'm younger." . . . And you know, I'm thinking, "I've got to do something," I mean, I've been going through this for twelve years now with the signs being put up and the intimidation. The picture-taking, just the comments. I've got to drive down the road and look straight ahead and I've got to tell my kids, "Don't look over there. Just look straight ahead. Ignore it. What would Jesus do?" . . . I'm trying to protect myself and my family more than anybody. I mean, we're scared shitless over this guy.

*Id*. at 30-31. At the close of the hearing, the trial court found that Walls represented a credible threat to the safety of Eagan or a member of Eagan's family. From this, the trial court concluded that Eagan had shown, by a preponderance of the evidence, that stalking had occurred sufficient to justify a protective order against Walls.

"Our Legislature has dictated that the Civil Protection Order Act (CPOA) shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt and effective manner; and (2) prevention of future domestic and family violence." *A.N. v. K.G.*, 10 N.E.3d 1270, 1271 (Ind. Ct. App. 2014) (citing *Parkhurst,* 786 N.E.2d at 1160 (citing Ind. Code § 34-26-5-1)). "Generally, a trial court

11

has discretion to grant protective relief according to the terms of the CPOA." *Id*. (citing Ind. Code § 34-26-5-9). "Thus, a finding by the trial court that domestic or family violence has occurred sufficient to justify the issuance of an order for protection means that the respondent represents a credible threat to the safety of the petitioner." *Id*. (citing I.C. § 34-26-5-9(f)). "Therefore, upon a showing of domestic or family violence by a preponderance of the evidence, the trial court 'shall grant relief necessary to bring about a cessation of the violence or the threat of violence.'" *Id*. (quoting I.C § 34-26-5-9(f)).

Walls contends that there was no harassment or continuing harassment except for the altercation between Walls and Terrell. *Appellant's Br*. at 10. Evidence was presented to the trial court regarding the details of the on-going dispute among the parties and the fear that Eagan felt. The trial court found that Walls represented a credible threat to the safety of Eagan or a member of Eagan's family. From this, the trial court concluded that Eagan had shown, by a preponderance of the evidence, that stalking had occurred sufficient to justify a protective order against Walls.

In light of these circumstances, and when viewing the evidence most favorable to the trial court's judgment, we conclude that the trial court properly granted Eagan's petition for a protective order against Walls and denied Walls's petition for a protective order against Terrell and Eagan pursuant to the provisions of the CPOA. In essence, Walls is merely requesting that we reweigh the evidence, which we will not do. *Andrews v. Ivie*, 956 N.E.2d 720, 724 (Ind. Ct. App. 2011). Affirmed.

BAKER, J., and ROBB, J., concur.