

# IN THE
# Court of Appeals of Indiana

N.B.,

*Appellant-Respondent*

v.

L.B.,

*Appellee-Petitioner*

FILED

Feb 12 2025, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 12, 2025

Court of Appeals Case No.
24A-PO-1856

Appeal from the Daviess Circuit Court

The Honorable Gregory Smith, Judge
Tonya Hosford, Referee

Trial Court Cause No.
14C01-2402-PO-173

**Opinion by Judge May**
Judges Tavitas and DeBoer concur.

**May, Judge.**

[1] N.B. appeals the trial court's grant of a two-year order of protection to L.B. under the Indiana Civil Protection Order Act ("CPOA") based on a finding that N.B. stalked and harassed L.B. He presents two arguments, which we restate as:

> 1. Whether the trial court violated N.B.'s right to due process when it failed to hold a hearing within thirty days from the date his motion for hearing on the ex parte order of protection against him; and

> 2. Whether the record contains sufficient evidence to support the trial court's grant of a two-year order of protection to L.B.

We affirm.

## Facts and Procedural History

[2] N.B. and L.B. began a romantic relationship in September 2022. In March 2023, the couple got engaged. However, in the midst of an argument on a trip to Louisville in August or September 2023, N.B. told L.B. that he would kill himself and her if she ended the relationship (hereinafter "the 2023 incident"). L.B. felt "intimidated . . . scared . . . [and] threatened[.]" (Tr. Vol. II at 8.) After the 2023 incident, the relationship was "pretty okay[.]" (*Id.* at 19.) In November 2023, L.B. discovered she was pregnant. N.B. attended doctor's appointments with L.B. until January 2024. The couple took "pictures together with the ultrasound picture[.]" (*Id.*) Also in January 2024, the couple went on a nine-day cruise.

[3] On February 15, 2024, L.B. told N.B. that she wanted to end the relationship. After that date, N.B. called L.B. several times and messaged her on social media. L.B. told N.B. she did not want to communicate with him. She stopped responding around February 18, 2024. On February 18, 2024, N.B. told L.B. he was going to call the Indiana Department of Child Services ("DCS"), and DCS would place L.B. "on a three-day hold, a psych eval and [her] baby would be taken out of [her]." (*Id.* at 8.) This call made L.B. feel "terrorized[.]" (*Id.* at 21.) On February 19, 2024, L.B. blocked N.B.'s phone number and his ability to contact her via social media.

[4] On February 28, 2024, N.B. contacted L.B. via a phone number for which caller identification was blocked and told her he was going to call the police on her and she would be arrested. He told her "he was personally going to go to the Courthouse and ensure that these things would be done[.]" (*Id.* at 8.) L.B. believed he would do so because N.B. was a law enforcement officer.

[5] That same day, L.B. filed for a protective order against N.B. based on the 2023 incident and the two calls in February 2024. She alleged N.B. "placed [her] in fear of physical harm . . . committed stalking against her . . . [and] committed repeated acts of harassment against [her]." (App. Vol. II at 9.) On February 29, 2024, the trial court granted an ex parte order for protection that prohibited N.B. from contacting L.B., after finding "stalking has occurred sufficient to justify the issuance of this order." (*Id.* at 21.) On March 8, 2024, N.B. filed a motion for hearing on the ex parte protective order. The trial court set a hearing regarding L.B.'s petition for an order of protection for April 9, 2024.

At the beginning of the hearing, during a discussion of the public nature of the hearing, N.B. notified the trial court "this hearing is being held outside the thirty-day limit." (Tr. Vol. II at 5.) The trial court ruled on the public hearing portion of the argument, but did not respond to N.B.'s statement about the hearing's timing. At the end of L.B.'s testimony, N.B. moved for a summary dismissal and argued his comments did not meet the qualifications for harassment and/or stalking. The trial court denied N.B.'s motion, took the matter under advisement, and asked the parties to submit proposed findings.[1] On July 5, 2024, the trial court granted L.B.'s request for a permanent order of protection against N.B. that would expire on February 28, 2026.

## Discussion and Decision

As an initial matter, we note L.B. chose not to file an appellee's brief. "Under such circumstances, we will not develop an argument for the appellees but instead will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Inspire Outdoor Living v. Norris*, 193 N.E.3d 428, 430 (Ind. Ct. App. 2022). Prima facie "means at first sight, on first appearance, or on the face of it." *Id*. (internal quotation marks omitted).

N.B. argues he was denied due process when the trial court did not hold a hearing within the time required by statute. "The fundamental requirement of

---

[1] On July 3, 2024, the trial court held a status conference hearing. No transcript thereof has been provided, and the Chronological Case Summary does not indicate what was discussed at this hearing.

due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *NOW Courier, Inc. v Review Bd. of Ind. Dept. of Workforce Dev.*, 871 N.E.2d 384, 387 (Ind. Ct. App. 2007). As the issue of whether a party was denied due process is a question of law, we review these arguments de novo. *Id.*

[9] According to N.B., the trial court was required to hold a hearing on L.B.'s petition for a protective order within thirty days pursuant to Indiana Code section 34-26-5-9(b), which states, in relevant part:

> (b) If it appears from a petition for an order for protection or from a petition to modify an order for protection that harassment has occurred, a court:
>
>> (1) may not, without notice and a hearing, issue an order for protection ex parte or modify an order for protection ex parte; but
>>
>> (2) may, upon notice and after a hearing, whether or not a respondent appears, issue or modify an order for protection.
>
> A court must hold a hearing under this subsection not later than thirty (30) days after the petition for an order for protection or the petition to modify an order for protection is filed.

That subsection precludes a trial court from entering an ex parte order and requires a trial court to hold a hearing within thirty days of the filing of the petition for protective order. It applies when a petition alleges only harassment, which is not what happened herein.

[10] Instead, the trial court issued an ex parte protective order and enjoined further threatening or stalking by N.B. "under the authority of Indiana Code § 34-26-5-9(c)" because "stalking has occurred[.]" (App. Vol. II at 21.) Subsection 34-26-5-9(c) lists forms of relief the trial court may grant "without notice and hearing in an ex parte order for protection . . . under subsection (a)[.]" Ind. Code § 34-26-5-9(a). The court's ex parte order stated N.B. was "restrained from committing further acts of abuse or threats of abuse to [L.B.] . . . [and] restrained from any contact with [L.B.]." (App. Vol. II at 20.) The order was scheduled to last two years.

[11] When a trial court has entered a two-year ex parte protective order that enjoins behavior under Subsection 9(c), the timing of any hearing that occurs thereafter is determined by Indiana Code section 34-26-5-10(a). Pursuant thereto, the court shall set a hearing "upon request by either party" and the hearing "must be held not more than thirty (30) days after the request for a hearing is filed unless continued by the court for good cause shown." Ind. Code § 34-26-5-10(a).

[12] N.B. filed his request for a hearing on the ex parte order on March 8, 2024. Thirty days after March 8 would be April 7, 2024. See Ind. Trial Rule 6(A) ("In computing any period of time . . . the day of the act . . . from which the designated period of time begins to run shall not be included."). However, April 7, 2024, was a Sunday, and Trial Rule 6(A) further explains that if the last day of the computed period is a Saturday, Sunday, legal holiday, or "a day the office in which the act is to be done is closed during regular business hours[,]"

then the time period runs until the "end of the next day" that the office is open. Routinely, the court would have been open on Monday, April 8, but Monday April 8, 2024, was not a routine day. Instead, all Daviess County offices were closed that day for the total solar eclipse that occurred over Indiana. *See* https://www.daviess.org/calendar.aspx?PREVIEW=YES&EID=660 [https://perma.cc/42B5-4YLW]. Thus, the time period for holding the hearing on N.B.'s request ended at the close of business on April 9, 2024. His hearing occurred on April 9, 2024, and he has not demonstrated that he was denied due process.

## 2. Sufficiency of the Evidence

N.B. argues L.B. did not present sufficient evidence to justify the issuance of a two-year order of protection. When we review the trial court's entry of a protective order, our review

> is two-tiered: we first determine whether the evidence supports the findings and then whether the findings support the protective order. In deference to the trial court's proximity to the issues and the witnesses, we will only reverse where there is no evidence supporting the findings or the findings fail to support the order. In addition, we do not reweigh the evidence or reassess the credibility of the witnesses. The appellant bears the burden of establishing that the trial court's findings are clearly erroneous.

*P.D. v. D.V.*, 172 N.E.3d 306, 310 (Ind. Ct. App. 2021) (internal citations omitted). Findings are clearly erroneous when our review of the record "leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo." *Fox v. Bonam*, 45

N.E.3d 794, 798 (Ind. Ct. App. 2015) (quoting *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied*).

[13]   L.B. petitioned for an order of protection under the CPOA, "which exists to promote the protection and safety of all victims of domestic or family violence and harassment in a fair, prompt, and effective manner." *P.D.*, 172 N.E.3d at 310 (citing Ind. Code § 34-26-5-1(1-2)). The CPOA also aims to prevent "future domestic violence, family violence, and harassment." Ind. Code § 34-26-5-1(3). At the same time, we must remember that "an improperly granted protective order may pose a considerable threat to the respondent's liberty[.]" *Barger v. Barger*, 887 N.E.2d 990, 994 (Ind. Ct. App. 2008). Therefore, "a court faced with a request for a protective order must balance, on the one hand, the need to protect actual and threatened victims against, on the other, the onerous burden borne by those erroneously subject to such an order." *S.H. v. D.W.*, 139 N.E.3d 214, 219 (Ind. 2020).

[14]   For an order of protection to be granted, a petitioner "must establish at least one of the allegations in the petition by a preponderance of the evidence." *M.R. v. B.C.*, 120 N.E.3d 220, 223 (Ind. Ct. App. 2019). In addition, "the petitioner must prove the respondent is a "present, credible threat to the petitioner or someone in the petitioner's household." *P.D.*, 172 N.E.3d at 310. "The threat posed by the respondent is viewed objectively, and the threat must be credible, meaning plausible or believable." *Id*. "Thus, the petitioner must prove, by a preponderance of the evidence, that there are reasonable grounds to believe that the respondent presently intends to harm the petitioner or the petitioner's

family." *Id*. If the petitioner meets their burden, the trial court "must issue a protective order and 'grant relief necessary to' end the violence or threat of violence." *S.D. v. G.D.*, 211 N.E.3d 494, 498 (Ind. 2023) (quoting Ind. Code § 34-26-5-9(h)). When entering a protective order, because such orders are similar to injunctions, "a trial court must make special findings of fact and conclusions thereon." *P.D.*, 172 N.E.3d at 310.

[15] In her petition, L.B. alleged N.B. was stalking her and committed repeated acts of harassment against her. Stalking requires the alleged perpetrator engages in a "knowing or intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. The term "repeated" as used in that definition means "more than once." *M.R.*, 120 N.E.3d at 224. "Harassment" means

> conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes.

Ind. Code § 35-45-10-2. As relevant herein, "[i]mpermissible contact" includes "[f]ollowing or pursuing the victim" and "[c]ommunicating with the victim[,]"

Ind. Code § 35-45-10-3(a), but that list is "nonexclusive." Ind. Code § 35-45-10-3(b).

[16] N.B. argues L.B. did not present sufficient evidence that, at the time she filed the petition for a protective order against N.B, there was a "credible threat to her safety." (Br. of Appellant at 15.) He notes he lives two and a half hours away from L.B. and contends there was no evidence he intended to visit the area in which L.B. lived. He also claims that in the phone calls on February 18, 2024, and February 28, 2024, he did not threaten L.B. with violence. Therefore, he asserts, the trial court should not have issued an order of protection against him.

[17] However, L.B. testified to three acts perpetrated during which she felt in danger. First, L.B. testified regarding the 2023 incident, during which N.B. threatened to kill her and himself. L.B. then told the trial court that on February 18, 2024, N.B. told her he would call the DCS and that DCS would place L.B. "on a three-day hold, a psych eval and [her] baby would be taken out of [her]." (Tr. Vol. II at 8.) This call made L.B. feel "terrorized[.]" (*Id.* at 21.) Finally, on February 28, 2024, N.B. contacted L.B. via a number with caller identification blocked and told her he was going to call the police on her and she would be arrested. He told her "he was personally going to go to the Courthouse and ensure that these things would be done[.]" (*Id.* at 8.) L.B. believed he would do so because N.B. was a law enforcement officer. N.B.'s argument is an invitation to reweigh the evidence, which we cannot do. *See P.D.*, 172 N.E.3d at 310 (appellate court cannot reweigh evidence or judge the

credibility of witnesses). L.B. provided sufficient evidence to support the trial court's grant of her request for a protective order against N.B. *See, e.g., M.R.*, 120 N.E.3d at 224 (sufficient evidence to support the issuance of a protective order based on repeated communication with the victim that made her feel threatened).

## Conclusion

[18] The trial court did not violate N.B.'s due process rights because it held a hearing on its ex parte order of protection within thirty days of N.B.'s request for a hearing pursuant to Indiana Code section 34-26-5-10(a). Additionally, there existed sufficient evidence to support the trial court's grant of L.B.'s request for a protective order against N.B. Accordingly, we affirm.

[19] Affirmed.

Tavitas, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Tiffany A. McCoy
The Law Office of Melissa Winkler-York
Indianapolis, Indiana