## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 29 2020, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Duane Walker
Jacksonville, Florida

ATTORNEY FOR APPELLEE

Sarah M. Wyatt
Ball Eggleston, PC
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.W., <br> *Appellant-Respondent*, <br><br> v. <br><br> V.W., <br> *Appellee-Petitioner*. | May 29, 2020 <br><br> Court of Appeals Case No. 19A-PO-2095 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Kristen E. McVey, Judge <br><br> Trial Court Cause No. 79D05-1902-PO-90 |

**Brown, Judge.**

[1]     D.W. appeals the trial court's August 15, 2019 order granting an ex parte order of protection. D.W. raises three issues which we revise and restate as:

I.      Whether the trial court had subject matter jurisdiction and personal jurisdiction;

II.     Whether the court erred in continuing the hearing; and

III.    Whether there was sufficient evidence to issue the order.

We affirm.

## Facts and Procedural History

[2]     On February 19, 2019, V.W. filed a petition for an order for protection. She alleged she was or had been a victim of stalking by her spouse, D.W, that the "incident(s) of domestic or family violence, stalking, or the sex offense" happened in Tippecanoe County, and that she lived in Tippecanoe County. Appellant's Appendix Volume II at 17.

[3]     On March 1, 2019, the Tippecanoe Superior Court held a hearing at which V.W. testified that she lived in Tippecanoe County, had been trying to divorce D.W. for seven years, and that a divorce action was filed in Virginia Beach, Virginia. She stated that D.W. left their house on April 20, 2012, and "ever since then there's just constant ways of harassment. Some of it's very direct, some of it is indirect." Transcript Volume II at 3. She testified that he sent letters to her family and friends saying she was a terrible wife and mother. She indicated that she left Virginia Beach, moved to Indiana, and began working at Purdue. She stated "in the first year that I was here [D.W.] began including my

work email address on these emails," she asked her department head what she should do, and he told her to go to the police. *Id.* at 5. She testified that Lieutenant Wisloski contacted D.W. in 2013 and told him that he need not communicate with her during work hours or by email.

[4] When asked what happened in 2019, she answered that D.W. was attempting to obtain access to her financial information, was harassing her and her attorney, and was "constantly sending me documents and he says that I have to charge you for all this." *Id.* at 6. The court explained that it did not have the authority to stop D.W. from exercising the legal process and its only authority was to order D.W. not to have contact with her. It also stated: "[M]y authority is very limited to just whether or not there's an emergency basis to grant a no contact order. Because after I grant it, I lost the authority entirely and it goes back to the divorce. I'm out, this court doesn't have any jurisdiction." *Id.* at 8.

[5] V.W. testified that Lieutenant Jonathan Eager called her on February 13th and said he thought D.W. was stalking her, that D.W. had sent him an email accusing her of being in a bigamist marriage, and D.W. had sent him pictures of her and her fiancé. She also stated that Lieutenant Eager told her "this was something that [she] needed to follow up with the harassment case." *Id.* at 9.

[6] The court found that "the active contacting the police and suggesting a bigamist relationship is an attempt to harass . . . [a]nd including sending . . . photos and personal items in an attempt to manipulate or harass" V.W. *Id.* It found there was an emergency basis upon which to grant the order and prohibit D.W. from

contacting her directly or indirectly. The court stated: "Alright, so I'll grant the order and my obligation further is to order that this order be transferred into the CL-12-3893 case in Virginia Beach, Virginia, for any further proceedings." *Id.* at 10.

[7]     That same day, the Tippecanoe Superior Court entered an ex parte order for protection citing Ind. Code § 34-26-5-9; finding that V.W. had shown by a preponderance of the evidence that domestic or family violence, stalking, or a sex offense had occurred to justify the issuance of the order; enjoining D.W. from threatening to commit or committing acts of domestic or family violence, stalking or a sex offense against V.W.; prohibiting D.W. from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with V.W.; and ordering him to stay away from V.W.'s residence, school, and place of employment. The order indicated it expires on March 1, 2021.

[8]     On March 13, 2019, D.W. was served with the order in Florida. On March 15, 2019, the trial court entered an order stating this action should be transferred to another court on the grounds that V.W. and D.W. are the parties to a dissolution of marriage or a legal separation action that is pending. The court ordered the proceeding be transferred to the "Virginia Beach, VA divorce case . . . in connection with case number CL 12 3893." Appellant's Appendix Volume II at 43.

[9]     That same day, the Circuit Court of the City of Virginia Beach, Virginia, entered an order: stating that the Tippecanoe Superior Court transferred the

proceeding involving a petition for an ex parte protective order; declining "to accept this case in this pending divorce case"; stating it was not aware of any Virginia statute that permits it to acquire or have jurisdiction conferred to it by an interstate transfer order; and ordering that its Clerk "return the case papers to the issuing court." *Id.* at 47.

[10] On April 9, 2019, D.W. filed an objection, a motion to dismiss, and a verified request for a hearing in the Tippecanoe Superior Court. In his correspondence with the court, D.W. stated:

> [D.W.] respectfully requests that these be filed appropriately and set on the Court's docket in the above mentioned order for any dates the Honorable Court is available from May 20, 2019 and beyond. [D.W.] will defer to Court dates that are available at the Court's discretion. [D.W.] is currently unavailable for any court date on these matters until after May 17, 2019 due to pre-existing work obligations.
>
> Please advise [D.W.] of any available dates and briefing schedules that are needed with regards to these matters. If this Honorable Court sets a hearing date on these matters, please provide a minimum of 2 week notice for [D.W.] to notify his employer of the time he needs to take off, please allow at least 2 weeks for correspondence between the Court and [D.W.] to be received and acknowledged, and please allow a reasonable time for [D.W.] to schedule transportation and lodging in Indiana due to the long distance between our two states.

*Id.* at 48 (emphasis omitted). D.W. also alleged the court did not have personal jurisdiction.

[11] On April 18, 2019, the court scheduled a hearing for June 11, 2019. On May 24, 2019, the court rescheduled the hearing for July 9, 2019. On June 3, 2019, D.W. filed an objection to the notice to appear arguing in part that the notice to appear did not give any reason for the continuance that the court granted *sua sponte*. On June 18, 2019, the court entered an order stating that the court set the contested hearing at D.W.'s request and that "[w]hether or not [D.W.] appears for the hearing, the Court will proceed to issue a ruling at that time." *Id.* at 195.

[12] On June 25, 2019, D.W. filed an "Objection to Failure to Acknowledge Receipt of First Objection and Objection to Failure to Docket or Rule on Motion to Dismiss in Violation of Indiana Rules of Court Rules of Trial Procedure Rule 53.1 Failure to Rule on a Motion"; an "Objection to Two Court Orders entered on June 18, 2019"; an "Objection to three violations of ICPOA and violation of Indiana Rules Of Court Rules of Trial Procedure Rule 53.5 Continuances"; and a "Motion for Written Findings of Fact and Conclusions of Law." *Id.* at 198. On July 2, 2019, the court entered an order stating that D.W.'s additional motions would be considered along with all other pending motions on July 9, 2019, and that "[b]ecause the Court set the hearing upon the previous request of [D.W.], the Court does not require [D.W.'s] attendance, but will reserve that time to consider all of the pending motions filed by [D.W.] in this matter, and reserves that time in case [D.W.] does choose to attend and desires to be heard." *Id.* at 219.

[13] On July 9, 2019, the court held the scheduled hearing and noted that neither D.W. nor legal counsel for D.W. appeared and that it received correspondence indicating D.W. might not appear. The court stated: "Given that it was [D.W.'s] request for a hearing, he was given the opportunity to appear today. As such, the protective order remains in place and the court will take under advisement his choice not to appear and will consider further all the motions that were filed by [D.W.]." Transcript Volume II at 11.

[14] On August 15, 2019, the court entered an order which found that it had subject matter jurisdiction. The order addressed D.W.'s verified request for hearing and stated: "This motion was previously granted, and the requested hearing was scheduled." Appellant's Appendix Volume II at 222. As to D.W.'s "Objection to Three Violations of IC 34-26-5 Chapter 5 Indiana Civil Protection Order Acts and Objection to Violation of Indiana rules of Court Rules of Trial Procedure Rule 53.5 Continuances," the court's order stated that it initially set the hearing outside of thirty days at D.W.'s request in his correspondence to the court on April 9, 2019. *Id.* It stated that, "[w]hile the matter was initially set for June 11, 2019, the Court re-set the matter on its own motion due to an unanticipated personal circumstance that arose for that date." *Id.* It also states that it "took notice of [D.W.'s] request for a minimum of two weeks prior notice for any hearing date set, and as such re-set the matter for July 9, 2019 in an effort to provide [D.W.] sufficient notice to make whatever arrangements he desired in time for that date." *Id.* at 222-223.

On August 26, 2019, D.W. filed a thirty-four page "Objection To Improper Actions Taken By This Honorable Court Under The 'Color of Law' Against Respondent Previously And In Their August 15, 2019 Order Which Violated Constitutional Due Process Rights and Privacy Rights." Appellant's Appendix Volume III at 2. On September 9, 2019, D.W. filed a notice of appeal listing the court's March 1, 2019 and August 15, 2019 orders as the appealed orders. On September 23, 2019, the court entered an order in response to D.W.'s August 26, 2019 motion and stated that D.W. waived any claim of error for setting the contested hearing outside of thirty days where D.W. requested the hearing on the 27th day after he was served with the ex parte order of protection, requested a hearing date outside of thirty days, and requested no less than two weeks advance notice. The court also found it had personal jurisdiction and subject matter jurisdiction.

## Discussion

Initially, we note that a *pro se* litigant is held to the same standards as trained attorneys and is afforded no inherent leniency simply by virtue of being self-represented. *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). The court will not indulge in any benevolent presumptions on his behalf. *See Ballaban v. Bloomington Jewish Cmty., Inc.*, 982 N.E.2d 329, 334 (Ind. Ct. App. 2013).

## I.

The first issue is whether the trial court had subject matter jurisdiction and personal jurisdiction. D.W. asserts the court did not have subject matter

jurisdiction because a pending divorce case existed in Virginia. He asserts he is a resident of Florida and his Fourteenth Amendment right to due process was violated when he was served with the ex parte order from Indiana without any hearing on the matter.

[18] To the extent D.W. asserts that the trial court lacked subject matter jurisdiction, the Indiana Supreme Court has held that "[s]ubject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006).

[19] Ind. Code Article 34-26 governs injunctions and restraining orders. Ind. Code § 34-26-1-3 is titled "Authority of circuit courts to grant" and provides in part that "[r]estraining orders and injunctions may be granted by the circuit courts, superior courts, or probate courts, or the judges of the circuit courts, superior courts, or probate courts, in their respective counties."

[20] At the time of the March 1, 2019 order for protection, Ind. Code § 34-26-5-4 provided:

> (a) Any court of record has jurisdiction to issue a civil order for protection.
>
> (b) A petition for an order for protection must be filed in the county in which the:
>
>> (1) petitioner currently or temporarily resides;
>>
>> (2) respondent resides; or
>>
>> (3) domestic or family violence occurred.

(c) There is no minimum residency requirement to petition for an order for protection.

(Subsequently amended by Pub. L. No. 266-2019, § 7 (eff. July 1, 2019)).[1] V.W.'s petition alleged that the "incident(s) of domestic or family violence, stalking, or the sex offense" happened in Tippecanoe County, and that she lived in Tippecanoe County. Appellant's Appendix Volume II at 17.

[21] At the time of the March 1, 2019 hearing, Ind. Code § 34-26-5-6(1) provided that "[a]n order for protection is in addition to, and not instead of, another available civil or criminal proceeding." Ind. Code § 34-26-5-6(2) provided that "[a] petitioner is not barred from seeking an order because of another pending proceeding." However, Ind. Code § 34-26-5-6(4) provided that "[i]f a person who petitions for an ex parte order for protection also has a pending case involving: (A) the respondent . . . the court that has been petitioned for relief shall immediately consider the ex parte petition and then transfer that matter to the court in which the other case is pending." The record reveals that the Tippecanoe Superior Court, pursuant to Ind. Code § 34-26-5-6(4), considered the petition and then transferred the matter to the Circuit Court of the City of Virginia Beach, Virginia, in which the divorce case was pending. The Circuit

---

[1] Pub. L. No. 266-2019, § 7 amended the statute such that subsection (b)(3) now provides: "A petition for an order for protection must be filed in the county in which the . . . (3) domestic or family violence or harassment occurred." It also added subsection (d), which provides: "If a court has jurisdiction over an action that relates to the subject matter of the requested civil order for protection under section 2(b) or 2(c)(3) of this chapter, either because of an action pending in that court or in the exercise of the court's continuing jurisdiction, the petitioner must file the petition for an order for protection in that court."

Court of the City of Virginia Beach transferred the proceeding involving the petition for the protective order back to the Tippecanoe Superior Court. Under these circumstances, we cannot say that the Tippecanoe Superior Court erred or that it lacked subject matter jurisdiction.[2]

[22] To the extent D.W. asserts he was not provided notice of the March 1, 2019 hearing, we observe that the Indiana Civil Protection Order Act ("CPOA") is codified at Ind. Code Chapter 34-26-5 and that Ind. Code § 34-26-5-9 stated at the time of the March 1, 2019 hearing:

> (a) If it appears from a petition for an order for protection or from a petition to modify an order for protection that domestic or family violence has occurred or that a modification of an order for protection is required, a court *may*:
>
>> (1) *without notice or hearing, immediately issue an order for protection ex parte or modify an order for protection ex parte*; or
>>
>> (2) upon notice and after a hearing, whether or not a respondent appears, issue or modify an order for protection.
>
> (b) A court may grant the following relief without notice and hearing in an ex parte order for protection or in an ex parte order for protection modification:
>
>> (1) Enjoin a respondent from threatening to commit or committing acts of domestic or family violence against a

---

[2] To the extent D.W. cites Ind. Code §§ 31-14-16-1, 31-15-4-1, and 31-15-5-1, these statutes relate to protective orders in the context of the establishment of paternity or in the context of dissolution under Indiana law. Given the dissolution is pending in Virginia, we do not find these statutes to be instructive.

petitioner and each designated family or household member.

(2) Prohibit a respondent from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with a petitioner.

* * * * *

(4) Order a respondent to stay away from the residence, school, or place of employment of a petitioner or a specified place frequented by a petitioner and each designated family or household member.

* * * * *

(8) Order other relief necessary to provide for the safety and welfare of a petitioner and each designated family or household member.

Ind. Code § 34-26-5-9 (subsequently amended by Pub. L. No. 266-2019, § 9 (eff. July 1, 2019)) (emphases added).

[23]   V.W.'s petition alleged stalking by D.W. Stalking, for purposes of the CPOA, is included in the definition of "domestic or family violence" pursuant to Ind. Code § 34-6-2-34.5. Stalking is defined in Ind. Code § 35-45-10-1 as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity."

[24] Ind. Code § 34-26-5-9(a) gives authority to the trial courts to issue ex parte orders for protection without notice. Ind. Code § 34-26-5-9(b) gives trial courts authority to issue certain relief without the requirement of notice and hearing in an ex parte order for protection. The relief the trial court granted in the March 1, 2019 order included: (A) enjoining D.W. from threatening to commit or committing acts of domestic or family violence, stalking or a sex offense against V.W.; (B) prohibiting D.W. from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with V.W.; and (C) ordering him to stay away from V.W.'s residence, school, and place of employment. This relief is permitted by the ex parte statute. *See* Ind. Code § 34-26-5-9(b).

[25] With respect to personal jurisdiction, such a determination presents a question of law we review de novo. *Boyer v. Smith*, 42 N.E.3d 505, 508 (Ind. 2015). "But whether personal jurisdiction exists can depend upon factual determinations concerning a defendant's contacts with the forum state – in which case the challenger bears the burden of disproving personal jurisdiction." *Id.* Accordingly, when the trial court issues findings of jurisdictional facts, we review those findings for clear error. *Id.* at 509. In so doing, we consider whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will reverse the trial court's factual findings only when the record contains no facts to support them either directly or indirectly. *Id.*

[26] Personal jurisdiction refers to a court's power to impose judgment on a particular defendant. *Id.* In Indiana, personal jurisdiction analysis begins with

Indiana Trial Rule 4.4(A), which sets out examples of activities that often support jurisdiction. *Id.* Ind. Trial Rule 4.4 provides:

> Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
> (1) doing any business in this state;
>
> * * * * *
>
> (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.
>
> In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.

[27]  The Indiana Supreme Court has interpreted "this catchall 'any basis' provision to 'reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the federal Due Process Clause.'" *Boyer*, 42 N.E.3d at 509 (quoting *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)).  "More specifically, before an Indiana court can properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment mandates that the defendant have 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting

*LinkAmerica Corp.*, 857 N.E.2d at 967) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). Minimum contacts include acts defendants themselves initiate within or without the forum state that create a substantial connection with the forum state itself. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985)).

[28] In his April 9, 2019 motion to dismiss, D.W. asserted that he contacted West Lafayette Police Lieutenant Jonathan Eager on January 22, 2019, February 4, 2019, and February 11, 2019 regarding investigating V.W. with respect to bigamy. He also asserted he contacted Tippecanoe County Sheriff's Lieutenant Travis Dowell on February 14, 2019, who responded that D.W. had provided no evidence of a crime being committed by V.W. and suggested that D.W. "finalize your divorce with [V.W.] in Virginia and move on." Appellant's Appendix Volume II at 63. D.W. also contacted Purdue University, V.W.'s employer. An exhibit attached to D.W.'s motion to dismiss consists of a letter from a licensed investigator based in Indianapolis, Indiana, which indicates he was hired to research V.W. and to locate information about her marrying another man and details his surveillance of V.W. in Indiana and his communication with her. Based upon the record, we cannot say the trial court erred in concluding it possessed personal jurisdiction.

## II.

[29] The next issue is whether the trial court erred in its *sua sponte* issuance of a continuance on May 24, 2019. D.W. cites Ind. Code § 34-26-5-10 and asserts

that the court improperly continued the June 11, 2019 hearing without showing good cause.

[30] At the time of the May 24, 2019 continuance, Ind. Code § 34-26-5-10 provided in part that "upon a request by either party not more than thirty (30) days after service of the [ex parte order for protection] or modification, the court shall set a date for a hearing on the petition" and that "[t]he hearing must be held not more than thirty (30) days after the request for a hearing is filed unless continued by the court for good cause shown." (Subsequently amended by Pub. L. No. 266-2019, § 10 (eff. July 1, 2019)).

[31] D.W. asserts that he was deprived of due process under the federal and state constitutions because the court continued the hearing beyond the thirty days specified in the statute. We observe that, following the service of the court's March 1, 2019 order on D.W. on March 13, 2019, D.W. did not request a hearing until April 9, 2019. In his April 9, 2019 correspondence, D.W. requested notice of a minimum of two weeks and requested that the matters be "set on the Court's docket . . . from May 20, 2019 and beyond" due to his unavailability due to work obligations. Appellant's Appendix Volume II at 48. Thus, D.W. requested the trial court to schedule the hearing beyond thirty days of his request. Further, while the court scheduled a hearing for June 11, 2019, and continued the hearing on May 24, 2019, to July 9, 2019, D.W. did not appear at the July 9, 2019 hearing. We do not find D.W.'s assertion that he was deprived of due process persuasive. Further, a deprivation of due process may amount to harmless error. *See, e.g., U.S. Outdoor Adver. Co., Inc. v. Ind. Dep't*

*of Transp.*, 714 N.E.2d 1244, 1261 (Ind. Ct. App. 1999) (appellant's due process claim did not require reversal where it did not show it was prejudiced), *trans. denied*. We cannot say that D.W. has demonstrated he was prejudiced by the date of the hearing or that reversal is warranted on this basis.

## III.

[32] The next issue is whether there was sufficient evidence to issue the protective order. "Under our traditional two-tiered standard of review, *see* Ind. Trial Rule 52(A), we ask whether the evidence supports the trial court's findings and whether its findings support the judgment." *S.H. v. D.W.*, 139 N.E.3d 214, 220-221 (Ind. 2020). In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Fox v. Bonam*, 45 N.E.3d 794, 798 (Ind. Ct. App. 2015); *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh evidence or reassess witness credibility. *Fox*, 45 N.E.3d at 798. We consider only the probative evidence and reasonable inferences supporting the order. *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010).

[33] "To obtain a protective order, the petitioner must show the respondent 'represents' – present tense – 'a credible threat to the safety of a petitioner or a member of a petitioner's household.'" *S.H. v. D.W.*, 139 N.E.3d 214, 219 (Ind.

2020) (quoting Ind. Code § 34-26-5-9(f)).[3] "Thus, the respondent must pose a threat to a protected person's safety when the petitioner seeks relief." *Id.* "If the petitioner meets this burden, 'the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.'" *Id.* at 219-220 (quoting Ind. Code § 34-26-5-9(f)).

[34] The August 15, 2019 order states:

> 4. The Petition in this matter, and [V.W.'s] testimony at the ex parte hearing indicated [D.W.] has relentlessly pursued [V.W.] by contacting her places of employment, her associates, her legal counsel, and the Purdue Police Department not with legitimate efforts to communicate, but with accusations and allegations intended to cause [V.W.] difficulties at her job, to endure criminal investigations of bigamy or criminal behavior or have her privacy and peace of mind invaded by requests for personal information or her email communications.
>
> 5. The Court observes that the nature and tone of the Defendant's lengthy filings (some of which are dozens of pages in length) evince the same behavior and include allegations that [V.W.] is a bigamist and a liar that has engaged in efforts to rally the Purdue Police Department and this Court into "believing" [V.W.] over [D.W.].
>
>> a. An example of one of many such assertions includes an allegation that [V.W.] "lied" to the Court and asserted that [D.W.] lived in Tippecanoe County – when in fact [V.W.] makes clear [D.W.] lives in Florida. The Court finds the box checked in Section 5 of the petition is an obvious scrivener's error considering the Petition makes clear on

---

[3] The quoted language of Ind. Code § 34-26-5-9 can now be found in subsection (g).

the first page that [D.W.'s] address is in Florida. This over-reaction of [D.W.'s] to any tiny insignificant detail, error or fact is indicative of an obsessive stalking behavior toward [V.W.] and/or anything to do with her.

6. [D.W.'s] own filings further detail lengthy surveillance of [V.W.] conducted at [D.W.'s] direction. The documents include a transcript of an interaction between a private investigator and [V.W.] and her partner. The transcript details an event in which the investigator gained access to [V.W.'s] home under false pretenses, and audio-recorded the interaction between the investigator and [V.W.]. Further, the questions asked by the investigator of [V.W.] and her partner clearly evince an attempt to gain information about the nature of [V.W.] and her partner's relationship and the size and layout of the residence. Additional materials provided by [D.W.] include "reports" made by the private investigator and sent to [D.W.] that detail surveillance conducted of [V.W.] and included information about her whereabouts, habits, social media activity, places she frequented, and the associates or persons with whom she interacted. The information further included photographs of [V.W.] and other associates, and the make, model and license plate numbers of vehicles believed to be associated with her. At times, more than one investigator was involved in the surveillance.

7. Based on the foregoing, there exists proof by a preponderance of the evidence that [D.W.] has engaged in a pattern of conduct that constitutes stalking and which justifies the continued issuance of the previously granted *ex parte* Order for Protection.

Appellant's Appendix Volume II at 223-224.

[35] At the March 1, 2019, hearing, V.W. testified regarding the "constant ways of harassment." Transcript Volume II at 3. Based upon the record, we conclude that V.W. presented evidence of probative value to establish by a

preponderance of the evidence that D.W.'s actions would cause a reasonable person to feel "terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. Further, the trial court could reasonably infer that V.W. did feel "terrorized, frightened, intimidated, or threatened." *Id.*

[36] For the foregoing reasons, we affirm the trial court's order.[4]

[37] Affirmed.

Najam, J., and Kirsch, J., concur.

---

[4] In her conclusion of her appellee's brief, V.W. requests "an award of costs and attorneys' fees related to this action." Appellee's Brief at 19. We decline to award attorney fees.